William STUART, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Fernand DANIS, Plaintiff,

v.

METROPOLITAN LIFE INSURANCE COMPANY, Defendant.

Civ. Nos. 85–0318 P, 85–0388 P.

United States District Court,
D. Maine.

July 14, 1987.

Jon Holder, Holder & Grover, Portland, Me., for plaintiff.

Howard H. Dana, Jr., Portland, Me., for defendant.

MEMORANDUM OF DECISION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

GENE CARTER, District Judge.

Plaintiffs Stuart [1] and Danis brought suit to challenge the recoupment of benefits by Defendant Metropolitan Life Insurance Company (Metropolitan) in an amount equal to retroactive lump-sum Social Security payments received by each Plaintiff. Jurisdiction is invoked pursuant to 29 U.S.C. § 1132 (1982), 28 U.S.C. § 1331 (1982), and 28 U.S.C. § 1332 (1982). Because the two cases involve nearly identical questions of fact and identical questions of law, the cases have been consolidated for all pretrial purposes.

The Plaintiffs' Amended Complaints [2] set forth eight counts; of the eight, only three now remain.[3] Count II alleges that Defendant breached its duties as an ERISA fiduciary in violation of 29 U.S.C. §§ 1022, 1104 (1982). Count III alleges that Defendant's recoupment breached the anti-assignment provision of the Social Security Act, 42 U.S.C. § 407 (Supp.III 1985). Finally, Count VI alleges a violation of New York Insurance Law § 3212.

Now pending before the Court are the parties' cross-motions for summary judgment on Counts II, III and VI. Both parties have submitted memoranda, as well as Statements of Undisputed Material Facts as required by Local Rule 19(b). The Court also has the benefit of the Magistrate's Memorandum and Recommended Decision. Having considered *de novo* all of the materials properly before it, *Jacobsen v. Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C.*, 594 F.Supp. 583 (D.Me.1984), the Court concludes that Defendant's motion for summary judgment should be granted, and Plaintiffs' motions for summary judgment denied.

### I. *Facts*

Plaintiffs Stuart and Danis both worked as hourly employees of the General Electric Company (GE) at the GE plant in South Portland, Maine. Stuart was employed as an International Association of Machinists and Aerospace Workers–AFL–CIO union member and Danis was a nonunion employee.

In 1970, as part of the collective bargaining process, GE and the unions representing its employees negotiated a Long Term Disability Plan (the Plan). As a result of that process, GE obtained Group Insurance Policy Number 23126–G (the Policy) from Metropolitan. The Policy, which provided long-term disability insurance, incorporated

---

**1.** William Stuart, Jr., the named Plaintiff in Civil No. 85–0318–P, died on November 13, 1986. Without objection, the Court substituted Gertrude M. Stuart, as surviving spouse and personal representative of Stuart's estate, to be the named plaintiff. Any reference in this opinion to "Plaintiff Stuart" is to William Stuart, Jr.

**2.** References to specific counts and to the "Amended Complaint" are to the Amended Complaints dated September 16, 1986. (Those Amended Complaints were received and filed by the Court on March 11, 1987, the date on which the Magistrate granted Plaintiffs leave to amend. Magistrate's Memorandum and Recommended Decision at 3.) The Court notes, in order to avoid any potential confusion, that it denied Plaintiffs' second request to amend their complaints. Memorandum of Decision and Order Denying Plaintiffs' Motion to Amend Complaint and Granting Defendant's Motion for Protective Order and Extension of Time (June 11, 1987) [hereinafter cited as Memorandum of Decision and Order].

**3.** The counts previously disposed of are as follows: Count IV (breach of Maine insurance statutes) was voluntarily dismissed by the Plaintiffs at oral argument before the Magistrate. Magistrate's Memorandum and Recommended Decision at 3. Counts I (common-law breach of contract), V (fraud and wilful failure to deal in good faith), VII (knowing and wilful violation of fiduciary duties), and VIII (conversion) were ordered stricken from the pleadings in light of two recent Supreme Court decisions: *Pilot Life Insurance Co. v. Dedeaux*, — U.S. —, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987), and *Metropolitan Life Insurance Co. v. Taylor*, — U.S. —, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987). *Dedeaux* and *Taylor* establish that the Employee Retirement Income Security Act (ERISA) preempts state common-law causes of action alleging improper processing for claims under an ERISA-regulated benefit plan. Accordingly, Plaintiffs conceded that Counts I, V, VII, and VIII did not allege valid causes of action, and the Court ordered those counts stricken from the pleadings. Memorandum of Decision and Order at 6.

the Plan by reference.[4] Participation in the Plan was voluntary, and employees paid the entire premium. GE made the Plan available on the same terms to non-union employees.

Both Plaintiffs purchased coverage under the Plan and both became disabled. The relevant language of the Plan provided that:

> Benefits will be paid monthly and will be one twenty-fourth of your normal straight-time annual earnings reduced by ... (2) any primary Social Security benefits.... If the benefits referred to in (2) ... would have been payable to you upon timely application, you will be considered as receiving such benefits. However, in no event, will the reductions referred to in ... (2) ... be used to reduce the monthly benefit otherwise payable to less than $50 a month.

Plaintiff Stuart's Deposition, Exhibit 1–D, at 39; Appendix to Plaintiff Danis' Motion for Summary Judgment, Exhibit 1–F, at 2.

When Stuart and Danis applied for disability benefits under the Plan, GE required each to sign a Reimbursement Agreement. The first paragraph of the Agreement required each Plaintiff to certify that he had made timely application for Social Security benefits. The Agreement then provided that Metropolitan would not deduct estimated Social Security benefits from Plaintiffs' monthly benefits under the Plan if Plaintiffs agreed to reimburse Metropolitan in full upon receipt of any retroactive Social Security payment. The Agreement also authorized Metropolitan to enforce this right to reimbursement, if necessary, by withholding or reducing future long-term disability benefits. Plaintiff Stuart's Deposition, Exhibit 3; Appendix to

Plaintiff Danis' Motion for Summary Judgment, Exhibit 3.

Both Plaintiffs applied for and were denied Social Security benefits. Each Plaintiff then signed the Reimbursement Agreement and immediately began receiving benefits under the Plan. The decision denying Social Security benefits was ultimately overturned, and each Plaintiff received a retroactive lump-sum disability payment. Metropolitan requested reimbursement, and when Plaintiffs failed to comply, Metropolitan began to recoup those amounts by withholding monthly benefits under the Plan. In the case of each Plaintiff, the withholding resulted in the loss of all monthly benefits under the Plan.

Plaintiffs then filed suit to challenge Metropolitan's recoupment.

## II. *Count II: Breach of ERISA Fiduciary Duties*

In Count II, Plaintiffs allege that Metropolitan breached the fiduciary duties imposed by 29 U.S.C. § 1104. In particular, Plaintiffs claim that Metropolitan violated 29 U.S.C. § 1022 by failing to explain in the plan summary the provisions now in dispute; Plaintiffs further claim that Metropolitan breached its fiduciary duties by failing to provide benefits as required by the Plan.

■ The Court rejects Plaintiffs' contention that Metropolitan violated 29 U.S.C. § 1022. The Magistrate correctly recognized that section 1022—which does require that a "summary plan description" (SPD) of any employee benefit plan be furnished to participants and beneficiaries—imposes obligations only on the plan administrator. *See* 29 U.S.C. §§ 1021, 1022, 1024(b)(1) (1982).[5] As defined by ERISA, the term

---

**4.** The Plaintiffs contend that there is a dispute over Metropolitan's role in drafting the language of the Plan. The Magistrate rejected this contention based on direct statements in the Affidavits of C. Stephen Tsorvas and David F. Walsh that GE and the unions negotiated the Plan's terms and conditions. Magistrate's Memorandum and Recommended Decision at 1 n. 1. The Court adopts the Magistrate's finding that Metropolitan was not a party to and did not participate in the negotiations between GE and the unions.

**5.** The summary plan description "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Section 1022 also specifies certain information that must be contained in the SPD, including an explanation of the procedures to be followed in presenting claims and the remedies available if claims are denied. 29 U.S.C. § 1022(b).

"administrator" means "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A)(i). The Plan governing Plaintiffs' benefits specifically provides that GE, not Metropolitan, is the Plan Administrator. Accordingly, section 1022 imposes obligations on GE, and Metropolitan cannot be found to have violated those mandates.

The Court also finds, as did the Magistrate, that summary judgment should be granted for Metropolitan on Plaintiffs' claim that Metropolitan's recoupment of benefits violated its fiduciary duties. The Court, however, reaches this result for a different reason.

The Magistrate cited caselaw for the proposition that exhaustion of administrative remedies is a prerequisite to judicial determination of a claim for breach of ERISA fiduciary obligations. *See Denton v. First Nat'l Bank,* 765 F.2d 1295, 1300–01 (5th Cir.1985); *Amato v. Bernard,* 618 F.2d 559, 566–68 (9th Cir.1980); *Worsowicz v. Nashua Corp.,* 612 F.Supp. 310, 314 (D.N.H.1985). The Magistrate then concluded that "[i]t is undisputed that the plaintiffs here did not exhaust their administrative remedies." Magistrate's Memorandum and Recommended Decision at 9 (footnote omitted).

If it was not clear on the record before the Magistrate, it is clear now that Plaintiffs do dispute the issue of exhaustion. Plaintiffs' Revised Memorandum of Law in Support of their Motion for Summary Judgment, at 33–37. Plaintiffs cite correspondence between Metropolitan officials and Plaintiffs' counsel to support their claim that they followed the appeals process established by Metropolitan.[6] Appendix to Plaintiff Danis' Motion for Summary Judgment, Exhibit 4 (Letter of May 30, 1984 from Delores Randazzo, Claims Supervisor, to Plaintiffs' counsel); Appendix to Plaintiffs' Revised Memorandum of Law in Support of their Motion for Summary Judgment, at 34–35 (Letter of June 12, 1984; same). That correspondence is sufficient to raise a question in the Court's view as to whether Plaintiffs exhausted their administrative remedies.

After reviewing the record as a whole, however, the Court concludes that the question of exhaustion is immaterial, because Plaintiffs are not entitled to relief based on the merits of their claim. An action brought pursuant to 29 U.S.C. § 1132(a)(1)(B) (1982)[7] for benefits due under a pension plan requires the court to review the plan administrator's determination under an "arbitrary and capricious" standard. This standard has been applied by every federal circuit court of appeals.[8] Application of the "arbitrary and capri-

---

**6.** Defendant has suggested that Stuart, a union member seeking benefits under an ERISA-regulated plan adopted as part of a collective bargaining agreement, was required first to employ the grievance procedure under that agreement. The Court notes some authority suggesting that union members may satisfy the exhaustion requirement by an appeals process distinct from the grievance procedure. *See Wolf v. National Shopmen Pension Fund,* 728 F.2d 182 (3d Cir. 1984) (union remedies exhausted through appeal to Pension Fund); *Amato v. Bernard,* 618 F.2d at 568 (primary purpose of exhaustion requirement is to give pension plan fiduciaries full opportunity to interpret the plan). Because the Court finds exhaustion to be immaterial to the ultimate resolution of this claim, the Court need not, and does not, determine whether Stuart's failure to pursue his claim through the union's grievance process precludes judicial review. Rather, the Court assumes, without deciding, for the purposes of this summary judgment motion, that the correspondence on behalf of both Plaintiffs challenging Metropolitan's re-

coupment exhausted the remedies available to object to Metropolitan's action.

**7.** Defendant contends that Plaintiffs' Count II seeks relief pursuant to 29 U.S.C. § 1132(a)(2), and that relief under that section is available only to the Plan. *See* 29 U.S.C. § 1109 (1982); *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985). The Court, however, has determined that the claim is for relief pursuant to 29 U.S.C. § 1132(a)(1)(B). The discussion in the text assumes that determination.

**8.** *See Jestings v. New England Tel. and Tel. Co.,* 757 F.2d 8 (1st Cir.1985); *Miles v. New York State Teamsters Conference Pension and Retirement Fund Employee Benefit Plan,* 698 F.2d 593 (2d Cir.1983), *cert. denied,* 464 U.S. 829, 104 S.Ct. 105, 78 L.Ed.2d 108 (1983); *Edwards v. Wilkes-Barre Publishing Co. Pension Trust,* 757 F.2d 52 (3d Cir.1985); *LeFebre v. Westinghouse Electric Corp.,* 747 F.2d 197 (4th Cir.1984); *Offutt v. Prudential Ins. Co.,* 735 F.2d 948 (5th

cious" standard involves a two-step process: "First, the court must determine the correct interpretation of the Plan's provisions. Second, the court must determine whether the Plan administrators acted arbitrarily or capriciously in light of the interpretation they gave the Plan in the particular instance." *Denton v. First Nat'l Bank,* 765 F.2d 1295, 1304 (5th Cir.1985).[9]

Initially, then, the Court must examine the language of the Plan and of the SPD [10] to determine whether recoupment was proper under those instruments. As with any contract, the Court must interpret the unambiguous language of the written document according to its plain and commonly accepted meaning. *Brackett v. Middlesex Ins. Co.,* 486 A.2d 1188, 1190 (Me.1985). *See also Restatement (Second) of Contracts* § 202 (1981).

The plain and unambiguous language of the Plan, set out above, provides that monthly benefits under the Plan will be reduced by any Social Security benefits. The SPD furnished to each Plaintiff also provided that Social Security benefits would reduce the amount of monthly benefits under the Plan.[11]

Plaintiffs argue, however, that the relevant language says nothing about reducing Plan benefits upon the payment of *retroactive* Social Security payments such as the Plaintiffs in this case received. Plaintiffs argue further that the documents specifically guarantee "that a disabled insured will receive a continuing *monthly* income that will not fall below 50% of his pre-disability monthly income in combination with monthly income from certain other sources, such as Social Security" and that "a literal reading of the SPD would obligate Metropolitan to pay [a disabled insured] the amount he was initially entitled to while being denied Social Security payments without any subsequent reductions for any reason, even to reflect contemporaneous offsets." Plaintiffs' Revised Memorandum of Law, at 20.

■ The Court finds Plaintiffs' argument to be without merit. The fact that the word "retroactive" is not used in the Plan or SPD language does not eliminate the fact that the clear language of those documents anticipates reductions in Plan benefits upon the receipt of Social Security benefits. A disabled insured would be required to accept such a reduction upon the immediate payment of Social Security benefits; it would be illogical to construe the contract language to mean that, because Social Security payments were delayed and then paid in a lump sum, the insured would

---

Cir.1984); *Moore v. Reynolds Metals Co. Retirement Program,* 740 F.2d 454 (6th Cir.1984), *cert. denied,* 469 U.S. 1109, 105 S.Ct. 786, 83 L.Ed.2d 780 (1985); *Sly v. P.R. Mallory & Co.,* 712 F.2d 1209 (7th Cir.1983); *In re Vorpahl,* 695 F.2d 318 (8th Cir.1982); *Elser v. I.A.M. Nat'l Pension Fund,* 684 F.2d 648 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983); *Peckham v. Board of Trustees,* 653 F.2d 424 (10th Cir.1981); *Sharron v. Amalgamated Ins. Agency Services,* 704 F.2d 562 (11th Cir.1983); and *Stewart v. National Shopmen Pension Fund,* 730 F.2d 1552 (D.C.Cir.), *cert. denied,* 469 U.S. 834, 105 S.Ct. 127, 83 L.Ed.2d 68 (1984).

**9.** Although the proposition cited is articulated in terms of the action of a plan administrator, the context makes clear that it is the action of the party charged with interpreting the Plan that is significant. Thus, the rule is no less valid in the present case because Metropolitan's action, rather than the action of the plan administrator (GE) is under scrutiny.

**10.** The language of the summary plan description is binding, even though not technically a part of the contract. *See Bachelder v. Communications Satellite Corp.,* 657 F.Supp. 423 (D.Me. 1987).

**11.** Plaintiff Stuart's Deposition, Exhibit 1–E, at 32 ("[t]he monthly LTD [long-term disability] benefit is reduced by monthly income from ... Primary Social Security"); Appendix to Plaintiff Danis' Motion for Summary Judgment, Exhibit 1–G ("You receive 50% of your monthly pay from the LTD Plan in combination with other disability benefits subject to a minimum benefit of $50 per month. Your monthly LTD benefit depends upon the monthly income you're entitled to from Primary Social Security."). Although the language in the SPD furnished to Danis was not as clear as that in the SPD furnished to Stuart, the Court is satisfied that the language in both SPD's plainly provides for a reduction of Plan benefits upon the receipt of Social Security benefits. That meaning is also supported by the same example in each SPD describing Plan benefits that will be paid to provide 50% of annual pay "if [the] disability continues and [the] disability income from other sources such as Primary Social Security ... [doesn't] total [50% of pay]...."

be entitled to full Plan benefits *and* the Social Security payment. Plaintiffs' focus on an entitlement to a *monthly* income is similarly misplaced. Even with reductions for Social Security payments, a disabled insured would continue to receive a monthly payment of $50 under the Plan—unless, as in the case of these Plaintiffs, the insured had received benefits in an amount greater than that to which he was entitled. Nothing in the Plan or SPD prohibits—and the Reimbursement Agreement expressly allows—recoupment for payment of Plan benefits that becomes an overpayment upon the insured's receipt of retroactive Social Security benefits.

The Court is not without sympathy for Plaintiffs' situation. In particular, the Court is disturbed by Metropolitan's practice of presenting a Reimbursement Agreement for the disabled insured's signature at a time when the insured is most vulnerable. It seems to the Court that the language of the Agreement, which most clearly explains how receipt of Social Security benefits will affect the amount of income received under the Plan, could easily be included in the language of the Plan and SPD.[12] Nevertheless, the Court cannot say that Metropolitan's recoupment of benefits paid violated the plain language of the contract. At least one other court has upheld recoupment under identical contract language. *Henning v. Metropolitan Life Ins. Co.*, 546 F.Supp. 442 (M.D.Pa.1982) (granting summary under New York law for defendant-insurance company). *See also Poisson v. Allstate Life Ins. Co.*, 640 F.Supp. 147 (D.Me.1986) (private insurer entitled to recoup benefits paid under disability plan that was integrated with receipt of government benefits when private beneficiary received lump-sum retroactive Social Security benefits); *Barklage v. Metropolitan Life Ins. Co.*, 614 F.Supp. 51 (W.D.Mo.1985) (language in Plan and Reimbursement Agreement substantially similar to language in this case entitled defendant to reduce amount of monthly payments to recoup "advances" paid while Social Security claim was pending; summary judgment for defendant).[13]

Because the Court finds Metropolitan's interpretation of the contract language to be correct as a matter of law, it follows that Metropolitan's recoupment of benefits consistent with that interpretation was not arbitrary or capricious. Summary judgment shall enter for Defendant Metropolitan (and be denied for Plaintiffs) on Count II.

### III. *Count III: Breach of Anti-Assignment Provision*

■ In Count III, Plaintiffs allege that Metropolitan's withholding of benefits vio-

---

**12.** Allowing itself for a moment to venture into the field of psychology, the Court suggests that complete and accurate disclosure of the effect of receiving retroactive Social Security benefits (or benefits from other sources) would go far to ensure contented subscribers. Simple reflection on human nature would indicate that it is the *sense* of having taken away with the one hand what is given by the other that creates resentment and disappointment in the insured. It is beyond the power of the Court's imagination to think that detailed disclosure would deter employees from signing up for the Plan.

**13.** The Court is aware of a Sixth Circuit case that arguably supports Plaintiffs' position. *Bush v. Metropolitan Life Ins. Co.*, 656 F.2d 231 (6th Cir.1981). *Bush*, however, required the court to interpret contract language drafted by the insurance company providing for recoupment "[i]f it is determined that any benefits paid to an Employee under the Group Policy *should not have been paid or should have been paid in a lesser amount....*" *Id.* at 232 (emphasis add-

ed). The court determined that language to be ambiguous and, construing the ambiguity against the drafter (Metropolitan), adopted Plaintiff's interpretation that recoupment was permitted only when the insurance company erroneously overpaid according to conditions manifest at the time of the payment. The court held that the lump-sum retroactive payment of Social Security benefits could not be offset against future monthly benefits, but only against the monthly insurance benefit due for the month in which the lump sum was received.

The present case is distinguishable from *Bush* in two important respects. First, the language in the Plan and SPD was the product of negotiations between GE and the unions. *See supra* note 4. The language was not drafted by Metropolitan, so the principle of construing ambiguity against the drafter does not affect Metropolitan. Second, the language determined to be ambiguous in *Bush* was not included in the contracts of the Plaintiffs in this case. Thus, the Court need only interpret the unambiguous, plain language of the document, as it has done in the text.

lates 42 U.S.C. § 407, which prohibits the transfer or assignment of Social Security benefits.[14] The Magistrate's Recommended Decision suggests that this Court's prior decision in *Poisson v. Allstate Life Insurance Co.*, 640 F.Supp. 147 (D.Me. 1986), is fully dispositive of the issues Plaintiffs raise under this Court. The Court agrees.

*Poisson* held that an integrated benefits plan (*i.e.*, a disability plan that provides variable benefits depending upon the amount of benefits received from other programs) does not violate section 407. As explained by the Court, "[t]he fact that Plaintiff ultimately received Social Security benefits for months past rather than present does not change the nature of the contract. [The insurance company] sought return of an alleged overpayment, not a right to Plaintiff's Social Security benefits as such." *Id.* at 149.

The Court is not persuaded by Plaintiffs' attempt to characterize the payment of benefits under an "integrated plan" as a transfer of Plaintiffs' rights to future Social Security benefits. Any recoupment for amounts not reimbursed is not a transfer, but payment for a debt owing to the insurer as agreed upon by the parties. The Court is also not persuaded by Plaintiffs' reliance on *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), and *Hisquierdo v. Hisquierdo*, 439 U.S. 572, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979). The Court maintains, as set out in *Poisson*, 640 F.Supp. at 149, that those cases are distinguishable.

The Court rejects Plaintiffs' invitation to reconsider its decision in *Poisson*. *Poisson* is fully dispositive of the issues in Count III. Summary judgment shall enter for Defendant Metropolitan and be denied to Plaintiffs.

## IV. Count VI: Violation of New York Insurance Laws

Plaintiffs allege in Count VI that Metropolitan's withholding of benefits violates a New York[15] statute which provides: "No money or other benefits payable or allowable under any policy of insurance against any disability ... shall be liable to execution for the purpose of satisfying any debt or liability of the insured...." New York Insurance Law § 3212(c)(1). "Execution" is defined to include "execution by garnishee process and every action, proceeding or process whereby assets of a debtor may be subjected to the claims of creditors." New York Insurance Law § 3212(a)(4).

Metropolitan argues in its Memorandum in Support of the Magistrate's Recommended Decision (June 22, 1987) that Plaintiffs' claim in Count VI is preempted by ERISA. Plaintiffs contend that section 3212(c)(1) is a law that "regulates insurance," and is therefore "saved" from preemption under section 514(b)(2)(A) of ERISA, 29 U.S.C. § 1144(b)(2)(A).[16] *See Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985).

The standards by which a court must determine whether a state statute "regu-

---

**14.** Section 407(a) provides as follows:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (Supp. III 1985).

**15.** The parties agree that, to the extent state law applies, New York law governs. Magistrate's Memorandum and Recommended Decision, at 3.

**16.** Section 514(a) of ERISA provides that the statute shall "supersede any and all State laws insofar as they may now or hereafter relate to

any employee benefit plan...." 28 U.S.C. § 1144(a). A savings clause, however, provides that, with one exception, "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance...." 29 U.S.C. § 1144(b)(2)(A). The exception, often referred to as the "deemer clause," provides:

Neither an employee benefit plan ..., nor any trust established under such a plan, shall be deemed to be an insurance company or other insurer ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts....

29 U.S.C. § 1144(b)(2)(B).

lates insurance" are anything but clear. Although the Supreme Court provided some guidance in *Metropolitan Life Insurance Co. v. Massachusetts,* 471 U.S. at 738–47, 105 S.Ct. at 2388–2393, and in *Dedeaux,* 107 S.Ct. at 1554–57,[17] the determination requires a new analysis for each statute invoked. The chore is especially difficult when, as here, a statute of another jurisdiction is involved, and there is a dearth of case law shedding light on the function of a particular provision in an overall statutory scheme. Given the uncertainty associated with the preemption question, the Court chooses to bypass that issue and address what is, in this case, the clearer and ultimately dispositive question of statutory interpretation.

Even if Plaintiffs were to prevail on their argument that section 3212 is not preempted by ERISA, they would not succeed on the merits of their claim. The Magistrate's Recommended Decision suggests, and the Court agrees, that New York Insurance Law section 3212(c)(1) proscribes only "execution" upon disability benefits; that section does not apply to an insurer's practice of recovering overpayments by withholding future payments. The Court agrees with the Magistrate that the definition of "execution" in section 3212(a)(4) anticipates some type of legal action taken to satisfy a debt or liability of an insured, and does not extend to a "self-help" situation where an insurer offsets benefits to recoup a prior overpayment. The only two New York cases cited that interpret the statute support such an interpretation. *Cohen v. Travelers Ins. Co.,* 275 A.D. 887, 90 N.Y. S.2d 719 (4th Dept.1949); *Wilkes v. Equitable Life Assurance Soc'y,* 289 N.Y. 63, 43 N.E.2d 812 (1942).[18]

Plaintiffs urge the Court to interpret the word "execution" broadly to include *any* type of action that subjects the insured's benefits to creditors. If the Court were to adopt such a broad interpretation, then an insurer would have no means to recoup benefits even after a legal determination that the insured had indeed received an overpayment. The drafters surely did not intend such a result. The Court takes no position on whether specific ERISA provisions or other provisions of the New York Insurance Law regulate an insurer's entitlement to resort to "self-help" by offset-

---

**17.** The Supreme Court has looked at three factors to determine whether a state statute falls under the regulation-of-insurance savings clause. First, the Court examines, under a "common-sense view" of the word, whether the statute "regulates" insurance. The Court has explained that "in order to regulate insurance, a law must not just have an impact on the insurance industry, but be specifically directed toward that industry." *Dedeaux,* 107 S.Ct. at 1554. Second, the Court looks at criteria that have been used to interpret the phrase "business of insurance" under the McCarran-Ferguson Act, 15 U.S.C. §§ 1011–1015 (1982 & Supp. II 1984). Those criteria are:

> "[F]irst, whether the practice has the effect of transferring or spreading a policyholder's risk; *second,* whether the practice is an integral part of the policy relationship between the insurer and the insured; and *third,* whether the practice is limited to entities within the insurance industry." *Union Labor Life Ins. Co. v. Pireno,* 458 U.S. 119, 129, 102 S.Ct. 3002, 3009, 73 L.Ed.2d 647 (1982) (emphasis in original).

107 S.Ct. at 1553–54. Finally, the Court looks at "the role of the saving clause in ERISA as a whole." *Id.* at 1555. The Court has stated that "[t]he deliberate care with which ERISA's civil enforcement remedies were drafted and the balancing of policies embodied in its choice of remedies argue strongly for the conclusion that ERISA's civil enforcement remedies were intended to be exclusive." *Id.* at 1556–57.

**18.** In *Cohen,* the trial court had found that a defendant-insurer was entitled to recover prior overpayments and to compel payment of erroneously waived premiums; the trial court *ordered* that the life insurance policy lapse unless the insured paid the judgment within thirty-one days. The Appellate Division, citing New York Insurance Law section 166 (the former version of section 3212), ruled that the order must be stricken. In addition to the fact that a court order was involved, the dispute in *Cohen* was also that of life insurance beneficiaries—not of the insured. Beneficiaries are treated differently than insureds under the statute. *See* New York Insurance Law § 3212(b).

*Wilkes* also involved a judgment by the trial court for an insured and an *order* for a setoff of future benefits. The New York Court of Appeals, also citing former section 166, held that judicial enforcement of the judgment out of disability benefits scheduled to become due was improper.

Unlike *Cohen* and *Wilkes,* the present case involves no prior judgment or court order subjecting Plaintiffs' disability benefits to Metropolitan's claim.

ting benefits; the Court determines only that section 3212(c)(1) does *not* cover that situation.

Plaintiffs' do not dispute the fact that Metropolitan's action in this case did not constitute "execution" in the sense of a legal proceeding, as defined in New York Insurance Law section 3212(a)(4). Plaintiffs' only argument has been that that definition should be interpreted expansively to include the "self-help" recoupment that occurred here. Because the Court has determined as a matter of law that section 3212 does not apply to the undisputed facts of this case, Defendant's motion for summary judgment must be granted (and Plaintiffs' motion denied) on Count VI.

### ORDER

In accordance with the foregoing, it is hereby ORDERED that

1. Defendant's motion for summary judgment on Counts II, III and VI be, and is hereby, GRANTED; and

2. Plaintiffs' motions for summary judgment on Counts II, III, and VI be, and is hereby, DENIED.