Richard GREIG, Jr., Plaintiff,

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**Civil Action No. 96–0349–R.**

United States District Court,
W.D. Virginia,
Roanoke Division.

Aug. 25, 1997.

---

Arthur Patrick Strickland, Arthur P. Strickland, P.C., Roanoke, VA, for Richard Greig, Jr.

Daniel Simpson Brown, Woods, Rogers & Hazlegrove, P.L.C., Roanoke, VA, for Metropolitan Life Ins. Co.

## MEMORANDUM OPINION

TURK, District Judge.

Richard Greig Jr. brought this case in the Circuit Court of the City of Roanoke, Virginia, as a motion for declaratory judgment. The issue is whether Mr. Greig must reimburse Metropolitan Life Insurance Company ("MetLife") for an alleged overpayment of benefits from an employee long term disability plan. MetLife removed the case to this court and filed a compulsory counterclaim seeking recovery from Mr. Greig of the alleged overpayment.

The Long Term Disability Plan at issue is an employee welfare benefit plan under the Employment Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001–1461 (1994), ("ERISA"). This court has federal question jurisdiction under 29 U.S.C. § 1132(e) and 28 U.S.C. §§ 1441 & 1446. *See Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

The parties have stipulated the facts and have filed briefs on the remaining legal issues. Oral arguments were held before the court on August 12, 1997. For the reasons stated below, the court finds that MetLife is entitled to recover the amount of the funds paid to Mr. Greig which were originally characterized as Social Security early retirement benefits.

### I. THE UNCONTESTED FACTS

Richard Greig Jr. is a former employee of General Electric Company who took early retirement in June 1992 at age sixty because of disability. Mr. Greig was a participant in the General Electric Long Term Disability Income Plan for Salaried Employees ("the Plan"). MetLife is the underwriter of the Plan.

The Plan provides for the coordination of its long-term disability benefits with any primary Social Security disability benefits or

Social Security retirement benefits payable at age sixty-five. The term "primary" refers to the fact that the benefits arise directly on the beneficiary's account, not from widower, dependent, or other type of "secondary" Social Security benefit provision. MetLife may reduce a beneficiary's long-term disability benefits by the estimated amount of Social Security disability benefits for which MetLife considers the beneficiary eligible, even if Social Security has not yet approved the disability application.

Mr. Greig applied for Social Security disability benefits, but his application was rejected on September 8, 1992. Under the Plan, long-term disability benefits became payable to Mr. Greig from MetLife during the month of December 1992.

. In order to avoid having MetLife reduce his long-term disability benefits, Mr. Greig on January 5, 1993 executed and delivered to MetLife the "Reimbursement Agreement Regarding Monthly Advances For Which Social Security Benefits May Later Be Payable," ("Reimbursement Agreement"). Mr. Greig's Plan long-term disability benefits were not reduced from the time of the initial payment under the Plan to the time he was awarded retroactive Social Security disability benefits.

Mr. Greig reapplied for Social Security disability benefits, and the reapplication was initially denied by notice dated February 15, 1994. Mr. Greig requested reconsideration. Upon reaching age sixty-two Mr. Greig had applied for Social Security early retirement benefits, and he had begun receiving those early retirement benefits in October 1993 in the amount of $894.00 per month.

The parties have also stipulated as to the Social Security regulations relevant to this case. According to the stipulations, Social Security early retirement benefits may be received on retirement after reaching age sixty-two, but they are less than the full Social Security benefits for retirement at age sixty-five. A beneficiary may not receive primary Social Security retirement benefits and primary Social Security disability benefits at the same time. Also, a beneficiary who has opted for and received Social Security early retirement reduced benefits may not receive unreduced, or full Social Security retirement benefits upon reaching age sixty-five.

By decision dated March 1, 1995, an Administrative Law Judge awarded Mr. Greig primary Social Security disability benefits retroactive to June 23, 1992. Mr. Greig received a lump-sum retroactive Social Security disability payment for the period through June 1995 in the amount of $10,526.75, and disability payments thereafter in the amount of $1,061.00 per month.

Because Mr. Greig had been receiving Social Security early retirement benefits of $894.00 per month since October 1993, the $10,526.75 check represented the difference between the amount of Social Security benefits originally paid out as early retirement benefits and the amount of disability benefits to which Mr. Greig was entitled for the period June 23, 1992, through June 1995, less his attorney's fees.

MetLife stopped making the monthly Plan long-term disability payments to Mr. Greig when it learned of Mr. Greig's retroactive Social Security disability award. Instead, MetLife applied Mr. Greig's long-term disability payment each month to the amount MetLife contends Mr. Greig owes in reimbursement, enabling it to recoup a part of its previous overpayment. The Reimbursement Agreement authorizes this action. Mr. Greig offered to reimburse MetLife the lump-sum Social Security payment of $10,526.75 in full satisfaction of MetLife's claims. MetLife declined this offer. MetLife insisted on reimbursement of what it regarded as the full amount of the retroactive Social Security disability award.

Mr. Greig's entitlement to long-term disability benefits under the Plan ended when he turned sixty-five, on August 11, 1996. The amount Mr. Greig allegedly owes MetLife is no longer decreasing because MetLife is no longer recouping the monthly amount. Upon reaching age sixty-five, Mr. Greig began receiving full Social Security retirement benefits, not the reduced early retirement benefits.

The parties have stipulated that, if Mr. Greig's position is correct, the total remain-

ing amount Mr. Greig owes the Plan is now $3,935.13 because of the amounts recouped by MetLife from July 1995 through August 1996. The parties also agree that, if Met-Life's position is correct, then the total remaining amount Mr. Greig owes the Plan is $21,691.09, including the recoupment.

## II. ANALYSIS

Mr. Greig advances two reasons supporting his claims that the Plan is entitled to reimbursement only in the amount of the lump-sum retroactive Social Security disability payment of $10,526.75 (now $3,935.13). First, Mr. Greig claims that the funds he received as Social Security early retirement benefits did not convert into Social Security disability benefits upon his award of retroactive disability benefits by the Administrative Law Judge. Second, Mr. Greig claims that the contractual language in the Plan and Reimbursement Agreement is ambiguous and therefore should be construed in his favor.

MetLife, in its counterclaim, contends that it is entitled to reimbursement for the entire amount received by Mr. Greig from the Social Security Administration until he reached age sixty-five, including the funds initially paid as early retirement benefits.

■ Mr. Greig's first claim is that the funds he received as Social Security early retirement benefits did not convert into Social Security disability benefits upon the Administrative Law Judge's award to him of retroactive Social Security disability benefits. If the early retirement payments retained their original character even after the Administrative Law Judge's decision, MetLife was mistaken in refusing Mr. Greig's offer to pay MetLife only the lump-sum award. The court is unpersuaded by this claim.

The Social Security Administration, when calculating its lump-sum payment to Mr. Greig, subtracted from the total retroactive disability award those Social Security funds already paid to Mr. Greig. The actual total disability award for Mr. Greig therefore included the funds Social Security had already paid. The original characterization of those funds as early retirement benefits does not deter their inclusion in the disability award

because, as the parties stipulated, a beneficiary may not receive Social Security retirement benefits and Social Security disability benefits at the same time. It would be improper for the Social Security Administration to pay Mr. Greig a retroactive disability award for a period in which he had already received retirement benefits without construing those earlier payments to now be part of the disability award.

Further, Mr. Greig began receiving full Social Security retirement benefits when he attained age sixty-five. As the parties stipulated, a beneficiary who has received Social Security early retirement benefits may not later receive full Social Security retirement benefits. The Social Security Administration is treating Mr. Greig as if he never received early retirement benefits, only disability benefits. The decision of the Administrative Law Judge and the Social Security Administration in awarding and calculating Mr. Greig's retroactive disability claim had the effect of making those earlier payments become part of the Social Security disability award. Therefore, the funds originally paid to Mr. Greig as early retirement benefits are properly included in the total retroactive disability award for the purposes of the Plan.

■ Mr. Greig's second claim is that the language in the Plan and the Reimbursement Agreement is ambiguous and therefore should be construed in his favor. Mr. Greig suggests construing the Plan and Reimbursement Agreement to not require a beneficiary to reimburse the Plan for any funds the beneficiary receives unless those funds are subject to recoupment by the Plan at the very moment the beneficiary receives them. Thus, if a beneficiary received funds as Social Security early retirement benefits, the Plan would never be able to recoup those funds regardless of later events such as a retroactive disability award which included the earlier funds. The court is not persuaded by this argument.

The court interprets the language of the Plan as an ERISA-regulated benefit plan, without deferring to either party's construction. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 112, 109 S.Ct. 948, 955, 103 L.Ed.2d 80 (1989). The court uses ordinary

principles of contract law and enforces the plan's plain language in its ordinary sense. *Bailey v. Blue Cross & Blue Shield of Va.,* 67 F.3d 53 (4th Cir.1995), *cert. denied,* — U.S. ——, 116 S.Ct. 1043, 134 L.Ed.2d 190 (1996).

General Electric distributes to participating employees a document containing the terms of the Plan (the "Plan Document"). Section II of the Plan Document, entitled "Your Benefits," describes the benefits payable upon disability. The relevant portion of Section II is set forth below.

b. If you become disabled on or after reaching age 60 but before reaching age 63 and 6 months, benefits as described in item d. below will be payable to the end of the month in which you reach age 65. No benefits will be payable after you reach age 65.

. . . . .

d. Your benefits under the Plan before age 65 will be the greater of (a) the benefits determined in accordance with the Schedule of Benefits Prior to Age 65 (Section II A 2), or (b) 50% or, effective for disabilities commencing on or after January 1, 1992, 60% or 70% (as elected by you) of your normal straight-time annual earnings reduced by (1) that portion of any disability pension benefits paid under the GE Pension Plan, which is derived from Company contributions (effective for disabilities commencing on or after July 1, 1991), provided such benefits are voluntarily elected by you, (2) *any primary Social Security disability benefits or primary Social Security retirement benefits payable at age 65,* (3) benefits under a Worker's Compensation or Occupational Disease law and (4) any benefits available in conformity with Federal, State, Commonwealth or Dominion laws of the United States or Canada. . . . *If an overpayment of benefits occurs for any reason under the Plan, the amount of overpayment will then be due and owed to the carrier.*

*If the benefits referred to in (2), (3), or (4) above would have been payable to you upon timely application, you will be considered as receiving such benefits . . . .*

*You are responsible for promptly notifying the carrier if any award or settlement of benefits derived from any source described in (2), (3), or (4) above is, or will become, payable retroactively. The carrier may, in addition to other remedies it may have to recover any overpayment, reduce future benefits otherwise payable under the Plan.* In determining overpayment, the carrier will adjust for an appropriate pro rata share of legal fees incurred by you to receive an award or settlement.

(The Plan Document at 919.4NE–1 and 2, emphasis added).

Mr. Greig also filled out the Reimbursement Agreement with the Plan to avoid having MetLife reduce his Plan benefits in anticipation of the Social Security disability award. By that agreement Mr. Greig stipulated the following:

In connection with my claim for Long Term Disability benefits provided under the General Electric Long Term Disability Income Plan, I certify that I have filed with the Social Security Administration timely application and submitted any required medical evidence for whatever primary benefits which may be due me under the Federal Old Age, Survivors and Disability Insurance Benefits Program.

I understand that Disability Benefits under the General Electric Long Term Disability Insurance Plan *are to be reduced by the amount payable for any period of time for which I am eligible for or receive primary Disability Insurance Benefits under the Social Security Act on my own account.*

*Pending adjudication of my claim for Social Security Disability Insurance Benefits, I hereby request Metropolitan Life Insurance Company to postpone deducting from my Long Term Disability Monthly Benefits the monthly amount of such primary Social Security Disability Insurance Benefits for which I am or may be eligible or entitled.*

*I agree that if this request is granted, I will reimburse Metropolitan Life Insurance Company in full for any postponed deductions immediately upon receipt from the Social Security Administration of any retroactive primary Disability In-*

*surance Benefits to the full amount thereof.* Furthermore, I agree that in the event of my failure ·to reimburse Metropolitan Life Insurance Company in full per this Agreement, Metropolitan Life Insurance Company may recoup the amount of the postponed deductions by withholding or reducing future benefit amounts which may ·become payable under any General Electric coverage for which I am insured.

(Reimbursement Agreement, January 5, 1993, emphasis added). Mr. Greig has stipulated that ·he had a copy of the Plan Document at all relevant times.

The Plan· Document does not explicitly warn that some Social Security benefits may, after they are received, cause a retroactive reduction of Plan benefits and thus cause an overpayment. Nonetheless, the clear language of the Plan Document and Reimbursement Agreement anticipates MetLife's right to reimbursement of overpayments. The Plan Document states, "If an overpayment of benefits occurs for any reason under the Plan, the amount of overpayment will then be due and owed to the carrier." 919.4NE–2. The phrase "for any reason" must be given its ordinary meaning, which without doubt covers Mr. Greig's situation.

The plain language would require a beneficiary to reimburse MetLife if the Plan overpaid because of an accounting error. It would run against the ordinary meaning to construe the Plan to mean that a beneficiary does not also owe reimbursement in a case where the overpayment results from a retroactive Social Security disability award. Such a conclusion would grant such beneficiaries the full Plan benefits, full Social Security disability· benefits, and full Social Security retirement benefits.

The Plan Document does not include, as Mr. Greig's· counsel suggested, a sentence in large type. warning that the term "any" as applied to Social Security disability benefits also includes other payments which may only later take on the nature of disability benefits. Nonetheless, a statement is not ambiguous merely because it does not list exhaustively every possibility. The Plan Document nowhere indicates that the right to reimburse-

ment depends solely on the initial characterization of the payments; rather, it uses broad language to include "any" Social Security disability benefit. The Plan Document and Reimbursement Agreement clearly state that "retroactive" awards are subject to recovery by MetLife. Also, Mr. Greig would not owe MetLife reimbursement for the retroactive disability award if he had not requested that the Plan postpone deducting for his Social Security benefits in the Reimbursement Agreement.

Other courts have examined substantially similar language, on other facts, without finding the language ambiguous. *See Lake v. Metropolitan Life Ins. Co.,* 73 F.3d 1372 (6th Cir.1996) (under the General Electric long term disability plan); *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619, 623 (D.Me. 1987), *aff'd. per curiam,* 849 F.2d 1534 (1st Cir.), *cert. denied,* 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988) (recoupment of benefits upheld under ERISA, plan provisions upheld as "plain and unambiguous").

The court finds that the language of the Plan Document and the Reimbursement Agreement is not ambiguous. Because the Court has· ruled, in response to Mr: Greig's first claim, that the payments initially characterized as Social Security early retirement benefits are properly included in the total Social Security disability award, the ordinary meaning of the Plan Document and Reimbursement Agreement language must control. MetLife may properly seek reimbursement for the full amount of the Social Security disability award.

The Court is aware that recovery of the Plan's overpayment some years after it has been received and probably spent may cause hardship to Mr. Greig. However, the plain language of the Plan requires the beneficiary to reimburse the Plan fiduciary in the event of overpayment, regardless of the reason. The court must give effect to the unambiguous terms of an ERISA plan.

MetLife's counterclaim is essentially a restatement of its opposition to Mr. Greig's claim, combined with a request for judgment against Mr. Greig for $21,691.09. MetLife may bring its counterclaim under 29 U.S.C.

§ 1132(a)(3)(B)(ii), which authorizes an ERISA plan fiduciary to bring "other appropriate equitable relief . . . to enforce . . . the terms of the plan." As explained, the court finds that MetLife is entitled to recover in the amount stipulated for those Social Security benefits Mr. Greig received which were originally characterized as early retirement benefits.

### III. CONCLUSION

For the reasons stated above, the court holds that Metropolitan Life Insurance Company is entitled to recover $21,691.09 from Richard Greig Jr. Mr. Greig's request for declaratory judgment that he owes MetLife only $3,935.13 will be denied. The parties are requested to submit a repayment schedule for the court's approval. An order consistent with this memorandum opinion will be entered this day.