**Georgianna BUSH, Plaintiff-Appellee,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant-Appellant.**

**No. 80–1249.**

United States Court of Appeals, Sixth Circuit.

Argued June 18, 1981.

Decided Aug. 12, 1981.

Philip M. Frost, Detroit, Mich., for defendant-appellant.

David K. Barnes, Martson, Sacks & Nunn, Kenneth Guinn Harlan, Detroit, Mich., for plaintiff-appellee.

Before ENGEL and MERRITT, Circuit Judges, and PORTER,* Senior District Judge.

MERRITT, Circuit Judge.

This appeal arises from a suit by plaintiff Georgianna Bush to recover amounts deducted from payments she received from Metropolitan Life Insurance Co. under a disability insurance policy. The policy was established by General Motors Corp. for its employees, including Bush. In January 1974 she sustained a personal injury. By January 1975 she was totally disabled, and after her application for social security disability benefits was denied, Metropolitan

---

* The Honorable David S. Porter, Senior Judge, United States District Court for the Southern District of Ohio, sitting by designation.

commenced payments of Extended Disability Benefits according to the policy. In December 1975, however, upon appeal, Bush was awarded social security benefits, and she received a lump sum payment of such benefits retroactive to January 1974. As provided in its policy, Metropolitan began in February 1976 to reduce the amount of its payments to Bush by the amount she received from social security. (Bush does not challenge the reduction of benefits equal to the amount of social security benefits contemporaneously received.) Metropolitan also notified Bush that it had overpaid the Extended Disability Benefits for the period of January 1975 to January 1976, in the amount of the retroactive award of social security benefits for that period. Since Bush did not refund the alleged overpayment as requested, Metropolitan began reducing her disability payments to recoup the overpaid amount. Thus from July 1976 through July 1978 Bush received no benefits from Metropolitan. The total amount of $3,435.16 was recovered by the insurance company in this fashion.

Bush brought suit in Michigan circuit court, challenging Metropolitan's "carve-out" from the disability payments of an amount equal to the social security benefits retroactively granted. The action was removed to federal district court, and after stipulation of facts both parties moved for summary judgment. After oral argument the district court granted Bush's motion and denied Metropolitan's. The contractual provisions at issue read as follows:

The Monthly Benefit is the applicable amount . . . reduced by an amount equal to the monthly equivalent of the total of the following benefits for which the Employee is eligible:

\* \* \* \* \* \*

Disability . . . Benefits (Primary Insurance Amount only) to which the employee is entitled under the Federal Social Security Act . . . .

\* \* \* \* \* \*

If it is determined that any benefits paid to an Employee under the Group Policy *should not have been paid* or *should have*

*been paid in a lesser amount*, the Insurance Company shall be entitled to a refund of the amount of the overpayment. If the Employee fails to repay such amount . . ., the Insurance Company may recover the amount of the overpayment by making an appropriate deduction or deductions from any future benefit payment or payments payable to the Employee under the Group Policy (emphasis added).

In interpreting this language the district court stated simply, "[t]he only contractual effect of eligibility for social security benefits is reduction of monthly insurance benefits, and a monthly insurance benefit cannot be reduced below zero. There is no provision in the policy for reducing future monthly insurance benefits by reason of past social security disability benefits received." Acknowledging that this gives an employee "a windfall when there is a delay in awarding social security disability benefits," the court stated that Metropolitan could have protected itself by explicitly adding a recoupment provision to the contract to cover such circumstances. The court therefore permitted Metropolitan to reduce its payment to Bush to zero for the month of December 1975 (when she received the lump sum social security payment), and to reduce its payment for each month thereafter in an amount equal to the social security payment she received for that month. The court held, however, that Bush was to receive the full amount of benefits from the insurance company for the months prior to December 1975.

The outcome of this case turns primarily on an interpretation of the contractual language quoted above, and specifically the phrase in the recoupment provision relating to "benefits [that] . . . should not have been paid or should have been paid in a lesser amount. . . ." Metropolitan argues that this language should be read to include not merely those situations in which benefits are mistakenly paid according to conditions as understood by the parties at that time, but also situations in which later developments render the earlier payments incor-

rect. Thus, according to Metropolitan, this is a situation in which benefits "should have been paid in a lesser amount," and the insurance company should be permitted to recoup the funds it would have withheld earlier had it known what the social security administration would do. To decide otherwise would in effect penalize Metropolitan for making payments to insured persons while their social security claims proceed through the bureaucratic machinery.

■ Metropolitan's reading of the contract is plausible, and its argument has some force. Several considerations have led us to conclude, however, that the district court's resolution of the issue was proper. At the time of payment the benefits were not benefits that "should not have been paid." At the time of payment, the claimant was entitled to what she received. Although Metropolitan's interpretation of the contractual language is plausible, a very different construction of the same language may also be made—*i. e.*, that recoupment is permitted only when the insurance company erroneously overpays according to conditions manifest at the time of the payment. An example would be if the company were not immediately notified that an insured has begun to receive social security benefits and continues for a few months to pay the full amounts of benefits under the insurance contract. In such a case once it learns that the insured has been receiving duplicate payments, the company can reduce its payments to recoup the overpayments made in the prior months. We think that this is also a plausible reading of the contract. The point is that the provision is susceptible of at least two different interpretations, and in a case involving an insurance contract, the law traditionally has been that ambiguities are construed against the drafter. *Mays v. Insurance Company of North America*, 407 Mich. 165, 172, 284 N.W.2d 256 (1979); *Zurich Insurance Co. v. Rombough*, 384 Mich. 228, 180 N.W.2d 775 (1970); Appleman, Insurance Law and Practice § 7402 (1976). In the present case, although Metropolitan notes that the general provisions of the insurance contract were hammered out at negotiations between General Motors

and the union representing its employees, it appears that the specific contractual language, such as that scrutinized above, was drafted by the insurance company. We therefore will follow the general rule of insurance contract construction and decline to accept Metropolitan's reading of the ambiguous language.

Because the provision in question was drafted by the insurance company we believe that this outcome will not cause Metropolitan any undue hardship in the long run. The company, it is true, will bear more of a financial burden than it had expected, should cases arise in the future similar to the present one and under contracts containing the same language. Metropolitan can cure the problem in future contracts, however, simply be redrafting the clauses in question to clarify the contract's coverage.

The fact that Metropolitan will be required to some extent to make payments it had not anticipated according to its reading of the contract leads us to the second consideration. This involves general principles of fairness and focuses upon the relative abilities of the parties to bear the financial hardship resulting from an incorrect interpretation of the contract. Metropolitan will bear a financial burden, but, as noted above, in the future this may be corrected by the company itself. Bush and other persons receiving payments under these contracts, on the other hand, by definition are disabled and unable to engage in gainful employment. They rely upon the monthly disability payments from the company to satisfy their basic needs. They may be able to save little, if any, of those payments. Therefore, if the insurance company is permitted to interpret an unclear contract provision in a fashion unexpected by the recipients to demand the return of funds from many prior months, grave hardship may ensue. The insureds may be hard pressed to support themselves if their monthly payments are significantly reduced to enforce the return of funds they have long since consumed. In the absence of clear contractual language supporting Met-

ropolitan's position, the balance of need of the respective parties convinces us that such an outcome is to be avoided.

■ This conclusion is supported by general principles of equity. In *Walker v. Conant*, the Michigan Supreme Court stated,

> The rule is general that money paid under a mistake of material facts may be recovered back . . .; but this rule is subject to the qualification that the payment cannot be recalled when the situation of the party receiving the money has been changed in consequence of the payment, and it would be inequitable to allow a recovery.

65 Mich. 194, 197, 31 N.W. 786 (1887), *quoted in General Motors Corp. v. Enterprise Heat & Power Co.*, 350 Mich. 176, 86 N.W.2d 257 (1957). And a court will withhold granting equitable relief that it otherwise would give when the relief would be burdensome to the defendant and of comparatively little benefit to the plaintiff. *DiGiovanni v. Camden Fire Insurance Ass'n*, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47 (1935).

Finally, Metropolitan's heavy reliance upon *Mays v. Insurance Company of North America, supra,* is misplaced. The contract in question in that case provides that the insurance company may recoup any "benefit payable under [social security] *regardless* of actual receipt of such benefit due to . . . failure to apply therefor. . . ." 284 N.W.2d at 257 (emphasis added). In interpreting an insurance contract, the Michigan Supreme Court determined that the insurance company could reduce its monthly payments to the insured by the amount the insured would receive as social security benefits even if the insured did not apply therefor, as well as for those actually received. We do not believe the result in *Mays* is conclusive in the present case, for two reasons. *First,* that case was concerned almost solely with the question whether the disabled employee was required by the contract to apply for social security or workmen's compensation benefits. The issue in the present case—the propriety of a carve-out for retroactive recoupment of insurance payments—was not dealt with at all in *Mays*, and the remedy was awarded without any discussion. *Second*, the language of the *Mays* contract specifically provides for recoupment "regardless" of the time of payment of social security benefits so long as it is found that the entitlement exists. In cases requiring the interpretation of contractual provisions, a court's analysis must, to a large extent, be limited to a review of the facts and language before it. Decisions in other cases can be applied only with great caution, reflecting an awareness that the contracts involved may be very different. Guided by the general principles discussed above, we have interpreted the contract before us, and we believe that the district court's reading of the contested language was correct. The decision below is affirmed.