Lucille G. LESSARD, et al.

v.

**METROPOLITAN LIFE
INSURANCE CO.**

Supreme Judicial Court of Maine.

Argued Nov. 3, 1989.
Decided Dec. 28, 1989.

Jon Holder, (orally), Holder, Grover & Wilkinson, Portland, for plaintiffs.

Howard H. Dana, Jr., (orally), Robert A. Moore, Verrill & Dana, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

WATHEN, Justice.

Plaintiffs Lucille G. Lessard and Robert F. Daniels, named plaintiffs in a class action suit, appeal an order of the Superior Court (York County, *Lipez, J.*) granting summary judgment in favor of defendant, Metropolitan Life Insurance Company (Metropolitan), on counts I, II, IV, V, VI, VII and VIII, and denying plaintiffs' cross-motion for summary judgment on counts I, II, IV, V and VI of plaintiffs' eight-count complaint. At issue is Metropolitan's practice of recouping overpayments created by the award of retroactive Social Security Disability Income Benefits (SSDIB) by withholding future long term disability benefits otherwise due disabled workers under a Long Term Disability Plan underwritten by Metropolitan. On appeal, plaintiffs contend that the motion justice committed various errors of law. We affirm the Superior Court's order respecting all counts but count VI. We vacate the judgment entered on count VI and direct the entry of judgment in favor of plaintiffs on the issue of liability only.

As reported by the Superior Court, the facts are as follows:

This controversy arises out of a group health and welfare plan instituted by Borden, Inc. [Borden], for the benefit of its employees. At issue here is the Long Term Disability Benefits Plan portion of the overall health and welfare package. The basic facts are not in dispute.

Since 1964 Borden has continuously maintained a long term disability benefits plan for its employees. The Borden Benefits Committee, which was charged with the administration of the Borden Long Term Disability Benefits Plan (the Plan or the LTD Plan), procured a group insurance policy from Metropolitan in 1969 to provide Plan benefits. The group policy was drafted under the direction of Borden and mirrors the Plan language. Although both the Plan and the policy were amended from time to time during the duration of the group policy,[1] the provisions of the Plan that are here at issue have remained fundamentally the same since 1972.

In 1974 Congress enacted the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 to 1461 (1985 & Supp. 1987) (ERISA) (effective January 1, 1975). With only certain exceptions, this Act pre-empted all state laws relating to employee health, welfare and pension plans and replaced them with a comprehensive federal scheme designed to ensure the proper handling of funds held in trust for those plans. The Act requires that plan participants and beneficiaries be adequately informed of their rights and duties under those plans, and it protected their interests in vested benefits and pensions. *See* 29 U.S.C. § 1001 (Congressional findings and declarations of policy).

The Borden LTD Plan fell within the ambit of this broad employee benefits scheme. Pursuant to these new ERISA requirements, the Benefits Committee named itself as the Plan Administrator to provide administrative services only.

---

1. Borden elected to self-insure its LTD Plan beginning in January 1983, retaining Metropolitan

and named Metropolitan as a fiduciary for claims administration purposes only. In its capacity as Plan Administrator, the Benefits Committee was responsible for issuing and did issue a Summary Plan Description (SPD) to the Plan participants. This Summary Plan Description was a synthesis of the much larger and more complex Plan documents and the group insurance policy, and was required by ERISA to be "written in a manner calculated to be understood by the average plan participant, and [to] be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Since ERISA did not mandate that any specific benefits be offered by the Plan, the Plan itself remained substantively unaffected by the enactment of ERISA.

The provisions at issue here concern the integration of Plan benefits and benefits from other sources. The Plan worked as follows: When a plan participant became disabled, he or she would initially be entitled to short term disability benefits. After 27 weeks of disability, short term disability benefits would expire and the participant would become eligible for long term disability benefits under the Plan. A claim would be submitted to Borden, which was forwarded to Metropolitan. Metropolitan then made the determination of eligibility or non-eligibility and informed Borden of its decision. In cases of eligibility, Metropolitan began issuing benefit checks to the disabled participant.

Benefits under the Plan were limited to a maximum of 60% of the participant's pre-disability income. If the participant was receiving no other benefits, Metropolitan would pay the entire 60%. However, pursuant to the integration of benefits provision, if the disabled participant was receiving disability benefits from some other source, such as a Workers' Compensation fund, the benefits payable under the Plan would be reduced by the amount of the other benefit, so that the total amount of disability benefits paid to the participant would not exceed 60% of pre-disability income.

In many instances, disabled participants would be eligible for Social Security Disability Income Benefits (SSDIB). After determining that a participant was eligible for Plan benefits, Metropolitan would urge the disabled participant to apply for SSDIB, if the participant had not done so already. Borden, and Metropolitan as the fiduciary for claims administration, claimed the right under the Plan to reduce benefits payable to the disabled participant by the amount of SSDIB that Metropolitan projected that the participant was entitled to receive. The Plan allowed Metropolitan to employ this "carve-out" device even if the participant did not apply for SSDIB. Disabled participants whose Plan benefits were reduced by a carve-out had a strong motivation to apply for SSDIB.

Many participants applied for SSDIB and were denied these benefits at the initial stage of the application process. After further appeal and review within the Social Security Administration, many of these initial denials were later reversed and SSDIB awarded to the applicant. Although this Court does not have an authoritative figure, Metropolitan states that as many as 80% of the SSDIB applications that are initially denied are later approved on appeal. Plaintiffs do not challenge this estimate.

When an initial denial of SSDIB was reversed on appeal and SSDIB were awarded, this determination resulted in prospective eligibility for SSDIB and, in addition, the disabled applicant would receive a lump sum figure for retroactive SSDIB for the time that the application was pending. The longer the process, and the more stages that an applicant had to pursue until a final determination of eligibility for SSDIB, the greater the retroactive SSDIB amount.

All of the plaintiffs in this class action applied for and were initially denied SSDIB. Although Metropolitan claimed the right under the Plan to continue a carve-out of Plan benefits even after an

initial denial if it believed the particular participant was eligible for and would eventually receive SSDIB, its actual practice after an initial SSDIB denial was to begin paying a disabled participant the maximum amount of Plan benefits without reduction. Metropolitan sent to each participant a Reimbursement Agreement before paying full benefits under the Plan. The Reimbursement Agreement was an acknowledgment that an award of retroactive SSDIB would result in an overpayment of Plan benefits and an obligation to reimburse the Plan. Although Metropolitan did not require that participants sign the Reimbursement Agreement before receiving full Plan benefits, more than half of the plaintiffs did sign Reimbursement Agreements.

Full Plan benefits were often paid for long periods while the SSDIB appeal proceeded. At varying points in time, all of the plaintiffs succeeded in winning SSDIB on appeal. The award of SSDIB included a retroactive award. When notified of the SSDIB award, Metropolitan would request that the disabled participant reimburse Metropolitan for the amount by which the retroactive SSDIB combined with the previously paid Plan benefits exceeded 60% of the participant's pre-disability earnings.

If a participant did not or could not reimburse the overpayment on request, and Metropolitan failed to reach agreement on reimbursement with the participant, Metropolitan would withhold current Plan benefits owed to the disabled participant and apply this amount to the outstanding overpayment balance. Although Metropolitan might in some instances only withhold part of the participant's Plan benefit check, in the cases of the plaintiffs it appears that Metropolitan withheld the entire monthly Plan benefit amount until the overpayment balance was satisfied.

Plaintiffs' complaint contains eight counts. Counts I and IV state causes of action based on ERISA, alleging that Metropolitan wrongfully withheld benefits in violation of both its fiduciary duties and the terms of the Plan; count II alleges that Metropolitan's practice of recouping overpayments by withholding benefits violated a provision of the Social Security Act, 42 U.S.C. § 407 (1982 & Supp.1987); count III seeks return of attorney fees expended by plaintiffs in prosecuting their Social Security appeals; count V alleges that the challenged practice violated New York Insurance Law § 3212(c)(1) (McKinney 1985); finally, counts VI, VII and VIII state common law causes of action in contract and for conversion and bad faith, respectively. The parties agree that New York law controls the state law issues.

The Superior Court granted summary judgment in favor of defendant on counts I, II, IV, V, VI, VII and VIII, and denied plaintiffs' cross-motion for summary judgment on counts I, II, IV, V and VI.[2] Plaintiffs challenge the order granting defendant's motion for summary judgment and denying their own.

ERISA Counts

### i. Jurisdiction

Counts I and IV of plaintiffs' complaint state causes of action based on ERISA, 29 U.S.C. § 1132(a)(1)(B) (1982 & Supp.1987) (civil enforcement provision allowing for recovery of Plan benefits wrongfully withheld). Jurisdiction is based on 29 U.S.C. § 1132(e)(1) (granting concurrent jurisdiction over subsection (a)(1)(B) actions to state courts of competent jurisdiction). *See also White v. Enron Corp. Merger Severance Plan,* 686 F.Supp. 582, 583 (N.D. Texas 1988); *Hoffman v. Chandler,* 431 So.2d 499, 503 (Ala.1983) (state court has subject matter jurisdiction of § (a)(1)(B) actions even where complaint includes count questioning fiduciary responsibilities as long as gravamen of complaint is suit for benefits wrongfully withheld).

---

**2.** Pursuant to a Consent to Judgment, where the parties agreed that judgment would be entered in favor of plaintiffs on count III and further agreed on a procedure whereby members of the plaintiff class will be able to recoup attorney fees expended in prosecuting their Social Security appeals, the Superior Court entered an order of final judgment.

### ii. Standard of Review

In deciding the ERISA counts, the Superior Court reasoned that the Plan interpretation at issue was not that of Metropolitan, who was a named ERISA fiduciary for claims administration purposes only. The court noted that Metropolitan's discretion was limited to making claims decisions on whether a particular individual was entitled to benefits under the terms of the Plan. Rather, the interpretation at issue was that of the Plan Administrator, the Borden Employee Benefits Committee, who served at the pleasure of Borden's CEO and who had "the exclusive right to interpret the Plan, to compromise claims and to decide any and all matters arising thereunder...." *Borden Plan* § 7.4. Thus, "Metropolitan had no authority to challenge a decision of the Plan Administrator, and with respect to the creation of an overpayment and its recovery through offsetting of benefits, Metropolitan was simply complying with the interpretation of the Plan Administrator."

█ The Superior Court applied a modified arbitrary and capricious standard of review to the Plan Administrator's interpretation. The court correctly reasoned that the presence of a Plan provision granting to the Plan Administrator exclusive authority over Plan interpretation created the classic trust situation. *See Firestone Tire and Rubber Company v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 954, 103 L.Ed.2d 80

(1989) (arbitrary and capricious standard appropriate where plan gives administrator discretionary authority to construe terms of plan). Recognizing, however, that the Plan Administrator was to some extent operating under a conflict of interest[3], the court modified the arbitrary and capricious standard to provide a heightened level of scrutiny.

The court applied the standard articulated by the United States Court of Appeals for the Fifth Circuit in *Denton v. First National Bank of Waco,* 765 F.2d 1295 (5th Cir.1985). The standard involves a two-step process: First, the court must determine for itself the legally correct interpretation of the plan provisions at issue[4]; second, it must compare its interpretation with that of the plan administrator. *Id.* at 1304. When the plan administrator's interpretation is incorrect, the court considers various listed factors to determine whether the plan administrator acted in an arbitrary and capricious manner. *Id.* (Such factors include the internal consistency of the plan under the plan administrator's interpretation as well as the good faith of the administrator). Thus, if the two interpretations agree, the inquiry ends and the overpayment and recoupment issues are decided; if the plan administrator's interpretation is incorrect, the court proceeds to the second step of the analysis.[5]

---

3. The employee-beneficiaries fund roughly 85% of the Plan, with Borden funding the remainder. The Metropolitan policy was amended twice during the course of its existence, each time resulting in a decrease of risk for Metropolitan. Under each version of the policy, however, the basic premium scheme remained the same: premiums were paid by *current* employees (and Borden) and were calculated prospectively on an "experience rated" basis, using the "actual incurred claim rates in the prior year as well as all years since issuance of the policy." Thus, to the extent that overpayments remained unrecovered in the prior year or years, premiums for current employees (and Borden) were increased; conversely, to the extent overpayments were recovered, future premiums were reduced. Finally, to the extent that such unrecovered overpayments were "substantial," Borden's realization of dividends might be adversely affected.

4. The parties agree that the "supreme controlling document" is the Plan. The insurance poli-

cy was purchased by Borden, and later the Borden Inc. Long Term Disability Benefits Trust for the purpose of implementing the Plan. Thus, the policy mirrors the Plan in most respects. It should be noted, however, that when reviewing the Plan Administrator's interpretation the Superior Court considered all relevant documents, including the policy.

5. Confusion exists concerning the appropriate standard of review in § 1132(a)(1)(B) actions. While ERISA is a 'comprehensive and reticulated statute,' [it] does not set out [explicitly] the appropriate standard of review for actions under § 1132(a)(1)(B) challenging benefit eligibility determinations." *Firestone Tire and Rubber Co. v. Bruch,* —— U.S. ——, 109 S.Ct. 948, 953, 103 L.Ed.2d 80 (1989) (citation omitted). In light of the apparent Congressional intent to incorporate much of Labor Management Relations Act fiduciary law into ERISA, as well as the prominence of trust principles throughout

### iii. Analysis

After reviewing the relevant Plan documents, the SPD and the group policy, the Superior Court ruled that "the only logical and reasonable interpretation is that a retroactive SSDIB award would result in an overpayment of Plan benefits." Among the documents cited were the following provisions of the Plan:

4.1 The amount of monthly benefit payable for each full month of Total Disability during the period specified in Section 3.4 shall be the excess, if any, of the amount determined in accordance with the benefit formula in the applicable schedule of the Appendix to the Plan [listed there at 60%], over the amount of Other Income Benefits determined in accordance with Section 4.2.

. . . .

4.2 The amount of Other Income Benefits, for each month or portion thereof for which a monthly benefit is payable in accordance with Section 4.1, shall be the aggregate of the following amounts available to the Covered Employee for such month or portion thereof:

. . . .

(b) The monthly rate of any Social Security Benefits to which the Covered Employee and any dependent of the Covered Employee is (or upon timely and proper request and submitting due proof would be) entitled by reason of the Covered Employee's disability. . . .

On the basis of the above and similar language in other Plan documents, as well as in the policy, the court concluded that "[t]he SPD, the Plan and the policy all make clear that LTD benefits will be integrated with other benefits, including social security benefits, on a monthly basis. A retroactive SSDIB award is nothing more than the aggregate monthly benefits due from the first day of eligibility until the day that SSDIB are finally approved."

■ With respect to Metropolitan's practice of offsetting future benefits to recoup overpayments created by a retroactive SSDIB award, the Superior Court ruled that the Plan Administrator had the right, as well as the duty, to utilize the offset device. At issue in this portion of the Superior Court's Order is the legally correct interpretation of § 6.1 of the Plan. That section provides as follows:

6.1 No benefit payable under the Plan shall be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance, or charge, and any action by way of anticipating, alienating, selling, transferring, assigning, pledging, encumbering, or charging the same shall be void and of no effect; nor shall any such benefit be in any manner liable for or subject to the debts, contracts, liabilities, engagements, or torts of the person entitled to such benefit.

The Superior Court ruled that the above language does not prevent Metropolitan from employing the offset device. In reaching this conclusion, "[t]he court recognized that ERISA had incorporated the common law of trusts to define the rights, duties and obligations of ERISA fiduciar-

ERISA, many courts have applied the LMRA arbitrary and capricious standard when reviewing benefit determinations in § 1132(a)(1)(B) actions. *See e.g., NLRB v. Amax Coal Co.,* 453 U.S. 322, 332, 101 S.Ct. 2789, 2795, 69 L.Ed.2d 672 (1981); *Elser v. I.A.M. Nat. Pension Fund,* 684 F.2d 648, 654 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). Other courts, responding to situations involving a self-interested fiduciary, have applied a heightened level of scrutiny. *See e.g., Dennard v. Richards Group, Inc.,* 681 F.2d 306, 314 (5th Cir.1982).

The United States Supreme Court considered the question in *Firestone,* which was decided after the Superior Court issued its order. The

Court held that, regardless of fiduciary self-interest, "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 109 S.Ct. at 956 (emphasis added). The Court concluded, however, by observing that "if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a 'factor[ ] in determining whether there is an abuse of discretion.'" *Id.* Because the latter circumstance is presented on these facts, we hold that the Superior Court applied the appropriate standard of review in this case.

ies." Specifically, the court referred to § 254 of the Restatement (Second) of Trusts, which states the general rule that in the course of administering a trust, a trustee can properly recover overpayments made to a beneficiary by withholding future amounts due the beneficiary. *Restatement (Second) of Trusts* § 254 (1959). Further, the court decided that § 6.1 did not alter the general rule because § 6.1 was, in effect, a spendthrift clause. *See Restatement (Second) of Trusts* § 152(2) (defining trust that by its terms imposes a valid restraint on voluntary or involuntary transfer of beneficial interest as spendthrift trust); § 254, Comment (c) (general rule applicable even where interest of beneficiary subject to spendthrift clause, as long as settlor has not manifested a different intention). *See also* IIIA Scott on Trusts § 254 (W. Fratcher 4th ed. 1988) ("Even though by the terms of the trust or by statute the interest of the beneficiary is not assignable by him and cannot be reached by his creditors, the trustee is entitled to withhold the amount of the overpayment to the beneficiary from his share under the trust.").

Plaintiffs contend that the Plan Administrator's interpretation was not the legally correct one and that therefore summary judgment should be granted in their favor. Specifically, plaintiffs argue that under the terms of the Plan the payments that plaintiffs received were absolutely due them at the time they were received, and that therefore the creation of an overpayment, which in plaintiffs' view means "a payment mistakenly or erroneously made to a person in an amount greater than was due," could not have occurred. Plaintiffs further contend that because the Plan's offset provision defines the amount of "Other Income Benefits" to be subtracted from each monthly benefit as "the aggregate of the following amounts *available* ... for such month," a retroactive lump sum SSDIB payment cannot be subject to the offset beyond the amount equivalent to one month's benefit and therefore does not create an overpayment. *See Borden Plan* § 4.2, *supra* at 496. (emphasis added). Finally, plaintiffs argue that § 6.1 precludes

Metropolitan's recoupment practice. *See supra* at 496. In support of this last contention plaintiffs allege that the Superior Court's application of trust principles was erroneous, stating that "[i]t is doubtful that trust law principles have any application to this case."

With regard to the overpayment issue, similar arguments were made unsuccessfully in *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. 619 (D.Me.1987), *aff'd,* per curiam, 849 F.2d 1534 (1st Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988). There, the court granted summary judgment in favor of defendant, explaining:

> The fact that the word 'retroactive' is not used in the Plan or SPD language does not eliminate the fact that the clear language of those documents anticipates reductions in Plan benefits upon the receipt of Social Security benefits. A disabled insured would be required to accept such a reduction upon the immediate payment of Social Security benefits; it would be illogical to construe the contract language to mean that, because Social Security payments were delayed and then paid in a lump sum, the insured would be entitled to full Plan benefits *and* the Social Security payment.

*Id.* at 623–4. *See also, e.g., Barklage v. Metropolitan Life Insurance Co.,* 614 F.Supp. 51, 59 (D.Mo.1985) ("The retroactive award of benefits proves that plaintiff was eligible at the time for such benefits. Plaintiff contracted for one amount, not two. Defendant was entitled to reduce this amount all along."); *Henning v. Metropolitan Life Ins. Co.,* 546 F.Supp. 442, 449 (M.D.Pa.1982) (permitting the recovery of a retroactive SSDIB award through offset of future benefits). Moreover, the *Denton* court emphasized that " '[t]he fact that a trustee's interpretation is not the correct one as determined by a district court does not establish in itself arbitrary and capricious action, but is a factor in that determination.' " *Denton,* 765 F.2d at 1304 (emphasis omitted) (citation omitted). Thus, even if the Plan Administrator's interpretation is not the legally correct one, it is at

least a reasonable one, and that is sufficient under *Denton*.

■ With respect to the recoupment issue, plaintiffs' argument is equally lacking in merit. The Superior Court's reliance on trust principles is well grounded in federal ERISA law. *See, e.g., Central States v. Central Transport, Inc.*, 472 U.S. 559, 570, 105 S.Ct. 2833, 2840, 86 L.Ed.2d 447 (1985) ("[R]ather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility.") (footnote omitted) (emphasis in original). Thus, in deciding the § 1132(a)(1)(B) standard of review issue, the *Firestone* court noted that "ERISA abounds with the language and terminology of trust law" and then cited various provisions of the Restatement (Second) of Trusts, as well as pertinent sections of two treatises on the common law of trusts in support of its decision. *See Firestone*, 109 S.Ct. at 954–5. Plaintiffs do not challenge the validity of the trust principles relied on by the Superior Court, only their application in this case. Accordingly, under the authorities cited above, plaintiffs' argument must fail.

■ Plaintiffs next argue that even if the Plan Administrator's interpretation is correct, plaintiffs were not sufficiently notified of their potential loss of Plan benefits as required by 29 U.S.C. § 1022(a)(1) & (b) (1982 & Supp.1987). Those provisions impose an obligation on the plan administrator to ensure that the SPD sufficiently informs beneficiaries of "circumstances which may result in ... denial or loss of benefits." *See also* §§ 1021 & 1024(b)(1) (vesting in the plan administrator responsibility for the plan description and the SPD). Plaintiffs' argument is without merit.

Metropolitan, an ERISA fiduciary for plan administration purposes only, bears no responsibility for the content of the SPD, and therefore cannot be held responsible for its inadequacy. *See Stuart*, 664 F.Supp. at 621–622.[6]

### Count II

■ Count II alleges that Metropolitan's recoupment practice amounts to an illegal assignment in violation of § 407 of the Social Security Act. That section reads in relevant part:

(a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (1982 & Supp.1989). Relying on *Poisson v. Allied Life Ins. Co.*, 640 F.Supp. 147 (D.Me.1986), a case presenting this precise issue, the Superior Court ruled that

[Metropolitan] was not asserting any right or entitlement to [plaintiffs'] social security benefits; [Metropolitan] was instead seeking a return of an overpayment created by an award of social security benefits. The fact that [plaintiffs elected] to satisfy the debt with the monies received from the Social Security Administration is of no consequence; [Metropolitan] has not attempted to reach those monies by any assignment of rights or legal process, and that is all that Section 407 prohibits.

Plaintiffs argue that: 1) if the Plan Administrator's interpretation is correct then the Plan "would track the language of the re-

---

6. It is not certain that the SPD's description of the Plan's integration of benefits scheme is lacking. *See Schwartz v. Newsweek, Inc.*, 653 F.Supp. 384, 389 n. 2 (S.D.N.Y.1986), *aff'd* 827 F.2d 879 (2nd Cir.1987) ("Under section 1022, an employer need not state every detail of a plan with absolute precision to avoid liability."). Moreover, some courts have declined to treat the § 1022 disclosure requirements strictly, and have instead looked to plaintiffs' actual knowl-

edge respecting circumstances resulting in loss of benefits. *See, e.g., Kamenstein v. Jordan Marsh Co.*, 623 F.Supp. 1109, 1112 (D.Mass. 1985) (refusing to allow recovery on the basis of lack of disclosure where plaintiff had actual knowledge of plan's forfeiture provision). Under these decisions, plaintiffs' knowledge of the effect of lump sum SSDIB awards through receipt of the Reimbursement Agreements precludes plaintiffs' argument.

imbursement agreement[s]", and similar agreements have been held to be assignments by at least one state supreme court[7]; and 2) *Poisson* was wrongly decided.

Plaintiffs' contentions are without merit. The Superior Court correctly determined that plaintiffs' obligation to reimburse Metropolitan for the overpayments grew, not out of the Reimbursement Agreements, but out of the Plan itself. Therefore, plaintiffs' reliance on the Reimbursement Agreements is misplaced. With respect to plaintiffs' contention that *Poisson* was wrongly decided, *Poisson* is in agreement with a majority of the cases deciding the issue. *See, e.g., Lamb v. Connecticut General Life Ins. Co.,* 643 F.2d 108, 111 (3rd Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981) (holding that offset of monthly SSDIB payments does not violate §407); *Hurd v. Illinois Bell Tel. Co.,* 136 F.Supp. 125, 142 (N.D.Ill.1955), *aff'd* 234 F.2d 942 (7th Cir. 1956). We find no error.

Count V

■ Count V alleges that Metropolitan's recoupment practice violates New York Insurance Law § 3212(c)(1) (McKinney 1985).[8] That provision exempts disability insurance benefits from execution. The statute defines execution as follows:

The term 'execution' includes execution by garnishee process and every action, proceeding or process whereby assets of a debtor may be subjected to the claims of creditors.

*Id.* § 3212(a)(4). The Superior Court ruled that the statute only applies in situations involving legal process and therefore does not apply in the case of a self-help offset. The court further ruled that the law was preempted by ERISA.[9]

The Superior Court's rationale for ruling that § 3212(c)(1) did not apply in the case of a self-help offset was based on its interpretation of *Wilkes v. Equitable Life Assur. Soc. of the United States,* 289 N.Y. 63, 43 N.E.2d 812 (1942), and also on its construction of § 3212 in its entirety. In *Wilkes,* the New York Court of Appeals held in a one-page opinion that the then-prevailing version of § 3212(c)(1)[10] prevented the defendant insurer from offsetting future disability benefits due on six life insurance policies to recover a judgment awarded based on the insured's fraud with respect to three other policies. *Id.* 43 N.E.2d at 813. The Superior Court ruled that the *Wilkes* holding was limited to situations where the insurer attempts to appropriate disability benefits by means of legal process, and thus did not apply to Metropolitan's self-help offset.

As further support for its interpretation, the court noted that § 3212(b), which affords protection to life insurance benefits, does not employ the term "execution" or any other to describe prohibited means, but instead protects those benefits generally "as against the creditors, personal representatives, trustees in bankruptcy and receivers in state and federal courts...." N.Y.Ins.Law § 3212(b)(1) (McKinney 1985). The court reasoned that the juxtaposition of the broad language in subsection (b)

---

7. Plaintiffs refer to *Brockman v. Metropolitan Life Ins. Co.,* 125 Ariz. 246, 609 P.2d 61 (1980). In that case, the Arizona Supreme Court held that an agreement entitling Metropolitan to recoup monies paid out in the event that the insured recovered on a personal injury claim was an assignment in violation of Arizona law. *Id.* 609 P.2d at 63.

8. Section 3212(c)(1) provides in relevant part:
   § *3212* Exemption of proceeds and avails of certain insurance and annuity contracts
   . . . .
   (c)(1) No money or other benefits payable or allowable under any policy of insurance against disability arising from accidental injury or bodily infirmity or ailment of the person

insured, shall be liable to execution for the purpose of satisfying any debt or liability of the insured, whether incurred before or after the commencement of the disability, except as provided in subsection (e) hereof.

9. Some of plaintiffs' claims arose before January 1, 1975 and are therefore not governed by ERISA. Because we agree that § 3212(c)(1) does not apply in the self-help offset situation, however, we need not reach the ERISA preemption issue.

10. This earlier version differs very little from the present statute. Neither party attaches any importance to the slight difference in language.

with the term "execution" in subsection (c) indicated a legislative choice to afford more limited protection in the case of disability benefits.

Plaintiffs argue that the Superior Court misread *Wilkes*. In plaintiffs' view, *Wilkes* does not support a distinction between non-judicial self-help offsets and execution through legal process. In support of their argument, plaintiffs contend that prior to the litigation Equitable had withheld benefits concededly due the insured in satisfaction of its claimed overpayment and that the *Wilkes* court specifically held that such offsets were impermissible under § 3212(c). Plaintiffs further contend that their reading of *Wilkes* is supported by the statute's definition of "execution," which they read as including a non-judicial self-help offset.[11]

Plaintiffs fail to appreciate that what the New York Court of Appeals had before it was not an order declaring that Equitable's practice of withholding benefits in satisfaction of its claimed overpayment was permissible; rather, it had before it a *judgment* in favor of Equitable for a sum certain, and a *judicially* ordered offset as a means of executing that judgment. It was that judicially ordered offset that the *Wilkes* court held was in violation of § 3212. *See Stuart v. Metropolitan Life Ins. Co.*, 664 F.Supp. 619, 626 n. 18 (D.Me. 1987). Thus, plaintiffs' argument is without merit.

Counts VI, VII & VIII

■ Counts VI, VII & VIII allege causes of action that arose prior to January 1, 1975 and therefore are not governed by ERISA. Because plaintiffs assign no error in the Superior Court's ruling respecting counts VII & VIII, these claims are not before this Court on appeal. Count VI is a claim for breach of the group insurance contract. It alleges that there is no contractual language creating an overpayment of Plan benefits upon receipt of a retroactive SSDIB award, and also that there is no language authorizing Metropolitan to withhold Plan benefits to satisfy an overpayment; thus, under familiar rules of contract construction, summary judgment should be granted in their favor. As mentioned above, New York law controls this claim.

The Superior Court declined to apply a contra proferentem construction, asserting that "under New York law a group insurance policy is considered a contract between the employer and the insurer, with the employees as third-party beneficiaries." *See Blue Cross of Northeastern New York, Inc. v. Ayotte*, 35 A.D.2d 258, 315 N.Y.S.2d 998 (1970) (declining to apply a contra proferentem construction to an employer-funded group hospitalization policy). Instead, the court looked to the "actual language of the contract, and to the intent of the parties to the contract," finding that "the original and continuing intent and interpretation of both Metropolitan and Borden" was that a retroactive award of SSDIB created an overpayment of Plan benefits and that such overpayment could be recouped by withholding future benefits.

We conclude that the Superior Court erred by failing to apply a contra proferentem construction to the Borden policy. In *Danzig v. Dikman*, 53 N.Y.2d 926, 440 N.Y.S.2d 925, 423 N.E.2d 402 (1981), the New York Court of Appeals upheld the Appellate Division's application of a contra proferentem construction to a group health policy purchased by the plaintiff subscriber through his association in the Queens County and Nassau County Bar Associations. *See Danzig v. Dikman*, 78 A.D.2d 303, 434 N.Y.S.2d 217 (1980). While the Borden policy was not entirely employee-funded, the fact that employee contributions accounted for 85% of the premiums brings this case much closer to *Danzig* than to *Ayotte*. Moreover, as a Court of Appeals decision, we recognize *Danzig* as more authoritative.

The expression "contra proferentem" signifies the familiar principle that "terms in an insurance policy which are ambiguous, equivocal, or uncertain ... are to be construed strictly and most strongly

---

**11.** Plaintiffs focus on the language, "[t]he term 'execution' *includes* execution by garnishee process *and every action,* proceeding or process...." § 3212(a)(4) (emphasis added).

against the insurer, and liberally in favor of the insured[.]" 43 Am.Jur.2d *Insurance* § 283 (1982). *See also Danzig*, 440 N.Y. S.2d at 926, 423 N.E.2d at 403; *Tonkin v. California Ins. Co.*, 294 N.Y. 326, 62 N.E.2d 215, 216 (1945). The effect of a contra proferentem analysis regarding the Borden policy is illustrated by considering the case of *Bush v. Metropolitan Life Ins. Co.*, 656 F.2d 231 (6th Cir.1981). In *Bush*, the court construed a similar policy in closely analogous circumstances.[12] In addition to the integration of benefits provisions discussed above, the policy at issue in *Bush* contained a recoupment provision. That provision read as follows:

> If it is determined that any benefits paid to an Employee under the Group Policy *should not have been paid* or *should have been paid in a lesser amount,* the Insurance Company shall be entitled to a refund of the amount of the overpayment. If the Employee fails to repay such amount ..., the Insurance Company may *recover the amount of the overpayment by making an appropriate deduction or deductions from any future benefit payment or payments payable to the Employee under the Group Policy.*

*Id.* at 232. (emphasis in original). The plaintiff argued that "[a]t the time of payment the benefits were not benefits that 'should not have been paid,'" but were absolutely due her at the time she received them. *Id.* at 233. Metropolitan argued that the language should be read to include "situations in which later developments render the earlier payments incorrect;" according to Metropolitan, such a situation was one "in which benefits 'should have been paid in a lesser amount[.]'" *Id.* at 232–3. The court held that the above provision, when read with the integration of benefits provisions, was ambiguous and thus resolved the ambiguity in favor of the plaintiff.

We find the analysis in *Bush* persuasive. Further, plaintiffs' construction in this case

is strengthened by the absence of *any* future benefits. Accordingly, we vacate that portion of the Superior Court's order granting Metropolitan's motion for summary judgment on count VI and order that plaintiffs' motion for summary judgment be granted on the issue of liability subject only to a determination of the statute of limitation defenses set forth in defendant's answer.

The entry is:

Order affirmed in part and vacated in part.

Remanded for further proceedings consistent with the opinion herein.

All concurring.

---

12. While the plaintiff in *Bush* received her retroactive award of SSDIB in December, 1975, the injury giving rise to her disability took place in January, 1974. Thus, *Bush* appears to be a pre-ERISA case.