**Marcus CALLOWAY,**

v.

**PACIFIC GAS & ELECTRIC COMPANY.**

No. 2:90cv156.

United States District Court, E.D. Texas, Marshall Division.

Aug. 3, 1992.

David Lynn James, Keeney, Anderson, Miller, James & Tate, Texarkana, Tex., for plaintiff.

Gregory P. Grajczyk, Harbour, Kenley, Boyland, Smith & Harris, Longview, Tex., for defendant.

### OPINION AND ORDER

HALL, District Judge.

CAME ON TO BE HEARD THIS DAY the above matter submitted to the Court by the parties upon stipulations and trial briefs. The Court, after considering the briefs of all parties to the action, the submitted stipulations, and the applicable case law, finds the following:

Plaintiff Marcus Calloway (hereinafter referred to as "Calloway") filed suit against his employer, the Defendant Pacific Gas & Electric Company (hereinafter referred to as "Pacific") on October 16, 1990, challenging the recoupment of benefits previously paid by Pacific pursuant to the employee long term disability plan entered into between the Union of which Calloway was a member and Pacific. (Plaintiff's Brief at page 1). The above action was originally filed in the 5th Judicial District Court of Cass County, Texas, under the Cause No. 90–C–651. (Plaintiff's Original Petition page 1). Pacific filed a "Notice of Removal" on November 9, 1990, asserting removal jurisdiction to the Marshall Division, Eastern District of Texas, pursuant to 28 U.S.C. § 1441(b) and (c), and 29 U.S.C. § 1132(A)(1)(B). (Pacific's Notice of Removal). Since the above action is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), jurisdiction is properly invoked pursuant to 29 U.S.C. § 1132 and 28 U.S.C. § 1331. The parties agreed that the action would be submitted to the Court for review based on the stipulations, exhibits, and pleadings previously filed in the action without the necessity of court hearing or trial. (Court's Order dated April 21, 1992).

## BACKGROUND AND STIPULATIONS

Marcus Calloway entered into an employment relationship with Pacific Gas & Electric Company on September 14, 1970. October 16, 1981, marks the last day Calloway worked for Pacific. Calloway left employment after becoming disabled while working for Pacific. Calloway had accumulated eleven years and one month of continuous service with Pacific from September, 1970, to October, 1981. On April 16, 1982, after being off work for a cumulative total of six months due to disability, Calloway became eligible under the plan for long term disability (hereinafter referred to as "LTD") benefits. Since the disability was due to an industrial injury, Calloway received worker's compensation benefits for a period of one year and seven months. This period ended June 6, 1983.

The Plaintiff was a participant of a benefit agreement between Local Union 1245 International Brotherhood of Electrical Workers AFL–CIO and Pacific. This benefit agreement was effective January 1, 1989, and was amended on the following dates: January 1, 1974; January 1, 1977; January 1, 1980; January 1, 1981; January 1, 1983; and January 1, 1984. The benefit agreement between Calloway and Pacific defined Calloway's eligibility for long-term disability benefits.

Calloway qualified as a participant under Part A—*Group Life Insurance and Long Term Disability Plan* of the benefit agreement and was eligible for long-term disability benefits. Pursuant to Section 2.13(B) of the plan, he was required to apply for long-term disability benefits by submitting to the administrator a written request for such consideration, together with medical evidence of disability. LTD benefits have been paid retroactive to June 6, 1983.[1]

The Benefit Agreement (hereinafter referred to as "the plan") requires all LTD recipients to apply for social security disability benefits. In March of 1983, Calloway applied for social security disability and was initially denied. Ultimately, and

---

**1.** Section 2.16—*Amount of Long Term Disability Benefit Payments* stated in pertinent part:

"Benefit payments under this plan will be the amount necessary to provide income equal to 50 percent of the basic monthly rate of the participant's regular classification in effect on the last day the participant works prior to becoming disabled.

"A. In computing the participant's 50 percent benefit, the following items will be included:

. . . . .

"C. Temporary workers' compensation benefits and supplemental benefits for industrial injury and, for injuries occurring on or after July 1, 1977, any life pension paid under the Workers' Compensation Act . . . ."

June 6, 1983, marks the date Calloway's workers' compensation benefits ceased.

solely based on efforts by Calloway, social security disability benefits were awarded in November of 1988. The social security benefit award was paid retroactively to September, 1984. The total retroactive payment was $36,246.25. The retroactive award was based on an initial social security monthly benefit level of $657.00. One-half of this initial monthly benefit level is $328.50. Prior to the commencement of his disability payment in June of 1983, Calloway had received from Pacific an Employee Handbook and Summary of Benefits. The $328.50 benefit level throughout the duration of the retroactive award period and until after 1989 amounts to $18,067.50. The plan administrator (Employee Benefit Administrative Committee) determined that long term disability benefits had been overpaid by $18,067.50. (Stipulations page 3). This determination was based on Section 2.16(A)(1) of the plan benefit agreement as it existed at the time Calloway became eligible for disability payments. *Id.* Calloway exhausted all appeal requirements through the Employee Benefit Administrative Committee on the issue of whether or not the plan could deduct for one-half retroactive social security benefits. The appeals were denied and the plan administrator's decision upheld. After the administrator's decision was upheld on appeal, the administrator began deducting from LTD benefit checks to secure repayment of one-half of the retroactive social security benefits. The administrator has deducted $261.31 from Calloway's LTD benefit checks from September, 1990, to present. At the current rate, complete recovery of one-half the retroactive award of social security benefit payments will not be achieved by the plan prior to Calloway's exhaustion of LTD benefits set for April 1, 1993.

The parties stipulated that a reasonable attorney's fee for submission and trial of this matter at the District Court level is $4,000.00.

Calloway asserts he is entitled to the sum of $261.31 per month commencing September 1, 1990, and continuing through the date of judgment; the sum of $112.90 commencing September 1, 1990, and continuing through date of judgment, said sum representing the amount of money not paid by Pacific on the note Calloway owed to Local Union 1245 I.B.E.W. which otherwise would have been paid on said note; punitive damages in an amount to be set by the Court based on the arbitrary and capricious action of Pacific in withholding the sum of $261.31 from Calloway's LTD benefit; and a declaration that Calloway's LTD benefit runs for eleven years and one month, with the starting date of July 6, 1983. The Court finds the requested relief asserted by Calloway is not well taken.

The primary issue before the Court is whether or not an ERISA regulated plan is entitled to reimbursement of one-half of the retroactive social security benefits paid to the plaintiff Calloway as a plan participant.

## STANDARD OF REVIEW

The Supreme Court recently held that a denial of benefits challenged under § 1132(a)(1)(B) generally is to be reviewed under a *De Novo* standard. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113–14, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). *Jordan v. Cameron Iron Works, Inc.,* 900 F.2d 53, 55 (5th Cir.1990). However, when a "benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan," *Id.,* courts are to accord substantial deference to the interpretation the administrator gives the employee benefit plan. *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. at 112–14, 109 S.Ct. at 955–56. In the present case, the result is the same under both standards of review.

Part C—Section 2.24, *Operation and Administration* of the plan states in pertinent part:

"B. *Employee Benefit Administrative Committee*

"The Employee Benefit Administrative Committee, appointed by the Company's Board of Directors to serve at its pleasure, is the administrator of the plan and is responsible for the overall administration of the plan. The administrator has

the sole power and duty to establish, and from time to time revise, such rules and regulations as may be necessary to administer the plan in a non-discriminatory manner for the exclusive benefit of participants and all other persons entitled to benefits under the plan.

"The administrator shall also maintain such records and make such rules, computations, interpretations, and decisions as may be necessary or desirable for the proper administration of the plan...."

Additionally, Part B—Section 2.14, *Qualification for Benefit Payments* under the plan states:

"The administrator will normally consider an ill or injured participant for long term disability benefits. Participants who are denied long term disability benefits shall be notified in writing of the reasons for that denial.

"A. The determination of disability will be made by the administrator...."

The Court, considering the above sections of the plan in question, finds that the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits and to construe the terms of the plan. Therefore, this Court is to accord substantial deference to the interpretation the administrator gave the employee benefit plan. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. at 113–14, 109 S.Ct. at 956. *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d at 55. Since the administrator or fiduciary has discretionary authority, this Court applies an abuse of discretion standard. *Id. Batchelor v. International Bhd. of Elec. Workers Local 861 Pension & Retirement Fund*, 877 F.2d 441, 444 (5th Cir.1989).

## PROCESS OF REVIEW

■ In cases in which application of this deferential approach has been found to be appropriate, this Circuit traditionally has employed a two-step process in analyzing administrators' interpretation of benefit plans. *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d at 56.

First, the Court must determine the legally correct interpretation of the plan's provisions. *Id. Denton v. First Nat'l Bank*, 765 F.2d 1295, 1304 (5th Cir.1985). If the administrator has not given a plan the legally correct interpretation, the Court must then determine whether the administrator's interpretation constitutes an abuse of discretion. *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d at 56.

## PLAN INTERPRETATION—REDUCTION OF LONG TERM DISABILITY BENEFITS BASED ON RETROACTIVE AWARD OF SOCIAL SECURITY BENEFITS

■ April 16, 1982, marks the date Calloway became eligible for long-term disability benefits. As previously set forth, Calloway received worker's compensation benefits up to June 6, 1983. Long term disability benefits have been paid since June 6, 1983.

In determining the initial amount of LTD benefits, the administrator looked to the plan. Part B—Section 2.16, *Amount of Long Term Disability Benefit Payments*, states:

"Benefit payments under this plan will be the amount necessary to provide income equal to 50 percent of the basic monthly rate of the participant's regular classification in effect on the last day the participant works prior to becoming disabled...."

Mr. Calloway's income equal to 50 percent of his basic monthly rate was $1,307.55. (Stipulation exhibits page 18). On July 5, 1983, Pacific began LTD benefits retroactive to June 6, 1983. In March of 1983, Calloway applied for social security disability and was initially denied. Ultimately, social security disability benefits were awarded in November of 1988.

Part B—Section 2.16, *Amount of Long Term Disability Benefit Payments*, further states:

"A. In computing the participant's 50 percent benefit the following items will be included:

"1. ... one-half of the participant's primary social security disability insur-

ance benefit if the participant is qualified for such benefit. . . ."

The social security benefit award was paid retroactive to September, 1984. The total retroactive payment was $36,246.25. The plan administrator, considering Section 2.16(A)(1) above, determined that LTD benefits had been overpaid in the amount of $18,067.50. The retroactive award was based on an initial social security monthly benefit level of $675.00. One-half of the initial monthly benefit level is $328.50. A $328.50 benefit level throughout the retroactive award period and until April, 1989, totals $18,067.50. Calloway exhausted all appeal requirements under the plan on the issue of plan reductions for one-half retroactive social security benefits. The appeal efforts were denied and the plan administrator's decision upheld. The administrator then began deducting LTD benefit checks to recoup the one-half retroactive social security benefits. It is undisputed that at the current rate the plan will not complete recovery of the LTD benefits overpayment. The administrator continues to deduct $261.31 from Calloway's LTD benefit check and has done so from September, 1990, to present.

This Court finds that the Employee Benefit Administrative Committee gave the plan its legally correct interpretation. The evidence before the Court shows that the administrative committee gave a uniform construction to the plan and the interpretation is consistent with a fair reading of the plan. *Batchelor*, 877 F.2d at 444–45. *Denton v. First Nat'l Bank*, 765 F.2d 1295, 1304 (5th Cir.1985). *Dennard v. Richards Group, Inc.*, 681 F.2d 306, 314 (5th Cir.1982). There is no evidence before the Court on whether the administrator's interpretation of the plan would result in any unanticipated costs. *Id.* Therefore, the Court does not pass on the issue.

Calloway's social security benefit award was paid retroactive to September, 1984. This is clearly a primary social security disability benefit, as contemplated under Pacific's plan, and the administrator was correct in securing repayment. It is as if Calloway were receiving social security disability benefits since September, 1984. In the event Calloway had been approved for social security benefits in 1984, it is undisputed that the plan, pursuant to Section 2.16(A)(1), would have been entitled to one-half of the participant's primary social security disability benefit. The retroactive nature of the award does not and should not change the characterization of the benefit under Pacific's plan. Plan participants' benefits should not dramatically differ because of the efficiency or lack thereof surrounding the Social Security Administration. In fact, Calloway has benefitted from the late approval by the Social Security Administration. The parties stipulated that at the current rate of reduction, $261.31 per month, complete recovery of one-half the retroactive social security award will not be achieved by the plan prior to Calloway's exhaustion of LTD benefits.

This Court holds recoupment of the benefits was proper under the plan and the administrator did not abuse his discretion interpreting the plan to require repayment. *Madden v. ITT Long Term Disability Plan*, 914 F.2d 1279, 1287 (9th Cir.1990). *Stuart v. Metropolitan Life Ins. Co.*, 664 F.Supp. 619, 623–24 (D.Me.1987), *aff'd*, 849 F.2d 1534 (1st Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 496, 102 L.Ed.2d 533 (1988). Any other interpretation would trump the overriding policy that plan participants are to be treated similarly in plan enforcement.

In *Bush v. Metropolitan Life Ins. Co.*, 656 F.2d 231 (6th Cir.1981), the only case this Court could find to support Mr. Calloway's position in the present lawsuit, the Court held that a lump sum retroactive payment of social security benefits received by the insured could not be offset by the employer against future monthly benefits but could only be offset against the monthly insurance payment due for the month in which the lump sum was received. Bush brought suit in a Michigan Circuit Court, challenging Metropolitan's "carve out" from the disability payments of an amount equal to the social security benefits retroactively granted. *Id.* at page 232. The action was removed to Federal District Court, and after stipulation of facts, both

parties moved for summary judgment. *Id.* After oral argument the district court granted Bush's motion and denied Metropolitan's. *Id.* The Court of Appeals for the Seventh Circuit affirmed. The contractual provision at issue in the case reads as follows:

"The Monthly Benefit is the applicable amount ... reduced by an amount equal to the monthly equivalent of the total of the following benefits for which the Employee is eligible:

"Disability ... Benefits (Primary Insurance Amount only) to which the employee is entitled under the Federal Social Security Act....

. . . . .

"If it is determined that any benefits paid to an Employee under the Group Policy should not have been paid or should have been paid in a lesser amount, the Insurance Company shall be entitled to a refund of the amount of the overpayment. If the Employee fails to repay such amount ..., the Insurance Company may recover the amount of the overpayment by making an appropriate deduction or deductions from any future benefit payment or payments payable to the Employee under the Group Policy (emphasis added)."

The Court went on to say:

"In interpreting this language the district court stated simply, '[t]he only contractual effect of eligibility for social security benefits is reduction of monthly insurance benefits, and a monthly insurance benefit cannot be reduced below zero. There is no provision in the policy for reducing future monthly insurance benefits by reason of past social security disability benefits received.' Acknowledging that this gives an employee 'a windfall when there is a delay in awarding social security disability benefits,' the court stated that Metropolitan could have protected itself by explicitly adding a recoupment provision to the contract to cover such circumstances. The court therefore permitted Metropolitan to reduce its payment to Bush to zero for the month of December 1975 (when she received the lump sum social security payment), and to reduce its payment for each month thereafter in an amount equal to the social security payment she received for that month. The court held, however, that Bush was to receive the full amount of benefits from the insurance company for the months prior to December 1975."

This Court declines to follow this position. In the *Bush* case the Court of Appeals stated:

"The point is that the provision is susceptible of at least two different interpretations, and in a case involving an insurance contract, the law traditionally has been that ambiguities are construed against the drafter. *Mays v. Insurance Company of North America,* 407 Mich. 165, 172, 284 N.W.2d 256 (1979); *Zurich Insurance Co. v. Rombough,* 384 Mich. 228, 180 N.W.2d 775 (1970); Appleman, Insurance Law and Practice § 7402 (1976).

"Because the provision in question was drafted by the insurance company we believe that this outcome will not cause Metropolitan any undue hardship in the long run. The company, it is true, will bear more of a financial burden than it had expected, should cases arise in the future similar to the present one and under contracts containing the same language. Metropolitan can cure the problem in future contracts, however, simply by redrafting the clauses in question to clarify the contract's coverage."

The Court of Appeals went on to conclude:

"In cases requiring the interpretation of contractual provisions, a court's analysis must, to a large extent, be limited to a review of the facts and language before it. Decisions in other cases can be applied only with great caution, reflecting an awareness that the contracts involved may be very different. Guided by the general principles discussed above, we have interpreted the contract before us, and we believe that the district court's reading of the contested lan-

guage was correct. The decision below is affirmed."

In the present case, the language in the agreement is clear. In fact, Pacific has even further clarified the language to conform to the longstanding practice by amending the plan to include retroactive social security awards. (Amendment effective January 1, 1988).

## PLAN AMENDMENT

■ Calloway asserts that his accrued benefits have been reduced by an ineffective plan amendment. It is undisputed that Part B—Section 2.16, *Amount of Long Term Disability Benefit Payments* of the plan was amended to read as follows:

"A. In computing the participant's 50 percent benefit, the following items will be included:

"1. ... one-half of the participant's primary social security disability insurance benefit (*including back pay awards*) if the participant is qualified for such benefit." (Emphasis added.)

Title 29 U.S.C. § 1054(g)(1) provides:

"The accrued benefit of a participant under a plan may not be decreased by an amendment of the plan, other than an amendment described in Section 1082(c)(8) of this title."

29 U.S.C. § 1054(g)(1) (1982). Section 1082(c)(8) sets forth certain criteria an amendment must satisfy in order to reduce accrued benefits. One criterion is that the amendment must meet with approval of the Secretary of the Treasury. 29 U.S.C. § 1082(c)(8). However, the Court's first inquiry is to determine whether the benefit is, in fact, an accrued benefit. This Court finds that under the plan the retroactive award of social security disability benefits is not an accrued benefit. The House Conference Report speaks directly to the point and states in pertinent part:

"Also, the accrued benefit does not include the value of the right to receive early retirement benefits, or the value of social security supplements or other benefits under the plan which are not continued for any employee after he has attained normal retirement age."

H.R.Conf.Rep. No. 1280, 93d Cong.2d Sess., *reprinted in* 1974 U.S.Code Cong. & Ad. News 4639, 5038, 5054. *Meagher v. IAM Pension Plan,* 856 F.2d 1418, 1423 (9th Cir.1988), *cert. denied,* 490 U.S. 1039, 109 S.Ct. 1943, 104 L.Ed.2d 414 (1989). The amendment did not have to be approved by the Secretary of the Treasury. The amendment clarifies the prior practice of Pacific concerning social security disability benefits.

## CONCLUSION

Courts have upheld the recovery of retroactive social security awards by ERISA plans where such plans provide for the reduction of benefits by such awards even when the plan does not specifically provide for such retroactive reimbursement. *Madden v. ITT Long Term Disability Plan,* 914 F.2d at 1287; *Stuart v. Metropolitan Life Ins. Co.,* 664 F.Supp. at 623–24. In the present case, under the terms of Pacific's benefit plan, this Court finds that the retroactive award of social security disability benefits is recoverable by the plan.

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that Calloway is not entitled to the sum of $261.31 per month commencing September 1, 1990, and continuing through date of judgment.

IT IS FURTHER ORDERED that Calloway is not entitled to the sum of $112.90 commencing September 1, 1990, and continuing through date of judgment.

IT IS FURTHER ORDERED that Calloway's claim for punitive damages is hereby in all things denied.

IT IS FURTHER ORDERED that Calloway is entitled to LTD benefits under the plan for a period of eleven years and one month ending April 1, 1993.

IT IS FURTHER ORDERED that the plan may secure repayment of the one-half retroactive social security disability benefit award under the provisions of the plan.

Any relief not expressly granted herein is hereby DENIED.